The Board of Commissioners of Carroll County *et al. v.* O'Connor.

No. 16,328.

THE BOARD OF COMMISSIONERS OF CARROLL COUNTY ET AL. *v.* O'CONNOR.

AMENDMENT OF PLEADING.—*During Trial.*—*Demurrer, Refusal to Permit Filing of.*—*Practice.*—Where a plaintiff amended his complaint during trial, and the amendment stated no new cause of action, but simply stated more fully and clearly a fact in connection with his cause of action, which in no respect misled the defendants, it was not error to refuse to permit the filing of a demurrer thereto after the amendment; for the complaint will be treated, in the Supreme Court, as if the formal matter had been stated when the demurrer was filed and ruled upon.

COUNTY.—*Liability for Additional Labor and Material as Directed by Superintendent of Public Works.*—*County Commissioners.*—A superintendent chosen by a board of county commissioners to superintend the construction of a public work (the substructure for a bridge), and to direct that additional labor and materials, not included within the written contract, be used, may bind the county for work done and materials furnished beyond the provisions of the contract, and the rule is the same whether the work be carried on by one county or jointly by two counties; and, in the absence of any agreement as to the cost of such additional labor and materials, the recovery may be for the reasonable value thereof.

COUNTY COMMISSIONERS. — *Bridge.* — *Insufficient Substructure.*— *Contractor Not Liable Where the Mistake is Alone in Plans and Specifications.*—Where county commissioners make a mistake in procuring an unsubstantial work (substructure for a bridge), the contractor, who complies with his contract in executing the work, can not be made to suffer the consequences of such mistake, but is entitled to compensation for extra work and materials used in making the structure substantial.

SAME.—*Waiver of Right to Pass Upon Workmanship and Materials.*— *Public Work.*—*Superintendent.*—*Right to Condemn.*—Where county commissioners, during the progress of a public work, have an authorized superintendent upon the grounds, watching the progress of the work, and when it is done pursuant to his directions, with his approval, and in substantial compliance with the plans and specifications, the commissioners not only waive their right to pass upon the workmanship and materials, but also their right to condemn either, unless there is collusion between the contractor and the superintendent.

SAME.—*Bridge.*—*Contractor.*—*Fraud.*—In such case, where the contractor laid the foundation of abutments, without timbers, over his

The Board of Commissioners of Carroll County *et al. v.* O'Connor.

objection, as directed by the superintendent with the knowledge and concurrence of the commissioners, the element of fraud is necessarily excluded.

SAME.—*Extra Labor and Materials.—Recovery.— When on Quantum Meruit.*—If a contractor performs extra labor and furnishes extra materials, and the price for such work and materials is not fixed in the contract, he can only recover what it is reasonably worth.

EVIDENCE.—*Value of Extra Work and Materials.—Quantum Meruit.— Contractor—Bridge.*—In an action by a contractor for extra work and materials used in the substructure for a bridge, which were not included in the contract for such structure, evidence of the value of such extra work and materials is admissible, the plaintiff being entitled to a recovery on the *quantum meruit.*

SAME.—*Record Entries.—Commissioners' Court.—Cumulative Evidence.* —The entry on the records of the commissioners' court, containing an agreement between the board and a contractor, uncontroverted, and could not have been controverted, and it was not error to exclude evidence of such agreement merely of a cumulative character.

SAME.—*Cost of Material Not Admissible to Show Quality.—Contractor.* —Evidence of the cost of material used by a contractor is not admissible for the purpose of showing the quality of the material, or the suitableness of the material for the purpose used.

SAME.—*A Paper Constructively Filed is Admissible.*—A paper is constructively filed when it is delivered to the proper filing officer, and, as such, may be read in evidence.

SAME.—*Custom or Habit.— When Immaterial and Harmless.*—In an action by a contractor against county commissioners, for extra work and materials, a witness, in response to the question: How much of this stone, if any, was composed of odds and ends? answered: "It was all good bridge stone, *such as we always sell to contractors of bridges.*" The italicized portion of the answer was immaterial and harmless.

SAME.—*Objection too General.—Supreme Court Practice.*—A specific objection to the admission of evidence, made in the appellate tribunal, is unavailing where the objection made in the trial court was too general.

SAME.—*Report of Superintendent of Public Work.*—The report of a duly appointed superintendent of a public work is admissible in evidence where no legal objection is made to its competency as a report of such agent.

RECOVERY.—*Quantum Meruit.—Contractor.—Extra Work and Materials.* —Where a contractor performs extra work and furnishes extra materials for a structure, not included in the contract, the contractor is not limited in his recovery to the arbitrary estimates of the en-

The Board of Commissioners of Carroll County *et al. v.* O'Connor.

gineer, nor by his refusal to make any estimates of the value of the work, but is entitled to a *quantum meruit.*

DEPOSITION.—*Motion to Strike from.— When not Available.*—A party can not strike from a deposition, in his own behalf, such parts as may not support his case, if they are within the issues and are responsive to questions asked by him.

SPECIAL FINDINGS.—*Inconsistent and Contradictory.*—If special findings are inconsistent with each other, and are contradictory, they can not control the general verdict.

WITNESS.—*Impeachment.—Declarations Made Out of Court.—Reputation for Truth.*—Where a witness has been impeached by contradictory statements made out of court, the party producing the witness may prove the witness's general reputation for truth and veracity in the neighborhood in which he lives.

MISCONDUCT OF COUNSEL.—*Statement in Presence of Jury of Facts Proposed to be Proven.*—Where a question to a witness has been objected to, it is not error for counsel to make a statement, in the presence of the jury, of the facts proposed to be proven, if there is no rule or order of court against it.

REHEARING. — *Petition for. — What Questions Considered. — Supreme Court Practice.*—Where the question of excessive damages has not been presented on original hearing it will be considered on petition for rehearing, if to deny it would do injustice to the complaining party.

NEW TRIAL.—*Conflicting Answers to Interrogatories.*—Where the answers to interrogatories are conflicting, a new trial will not be ordered for that reason, unless it appears that the jury were disposed to distort the evidence in favor of one party or the other.

ESTOPPEL.—*In Pais.—Contract.—Must be Pleaded.*—A contract can not be set up as an estoppel unless it is pleaded.

From the Cass Circuit Court.

*J. H. Gould, G. R. Eldridge, Q. A. Myers, E. B. Sellers* and *W. E. Uhl,* for appellant.

*M. Winfield, C. R. Pollard, R. C. Pollard* and *C. E. Taber,* for appellee.

HACKNEY, J.—This action was begun in the Carroll Circuit Court, and, on change of venue, was tried in, and judgment rendered by, the Cass Circuit Court.

The appellee sued the appellants, in one paragraph of complaint, for the construction, under a written contract, of the substructure for a bridge across the Tippe-

canoe river, dividing the counties of Carroll and White, and also for the labor in tearing down such substructure and for the labor and additional material in rebuilding the same.

The theory of the complaint is that the original building of the substructure was in compliance with the written contract, and that the labor of tearing it down, and the labor and additional material in building another, was not under such written contract, but by the direction, authority, and superintendence of the chosen agent of the appellants, and the contract implied therefrom.

The answer was in three paragraphs, the third of which alleged that said original construction was so defective in material and workmanship as to have failed, in many respects specifically stated, to comply with the terms of the written contract for its construction, and that such defects made it necessary to tear it down, that it might be built according to the plans and specifications made a part of said written contract.

The reply to this answer is argumentative, but it sufficiently follows the theory of the complaint to negative the allegations of the employment of defective materials and workmanship, and to charge the defects existing in the substructure to the insufficiency of the plans and specifications.

The case was tried upon the theory outlined by our statement of the pleadings, and resulted in a verdict and judgment for the appellee.

The first alleged error arising upon the briefs and argument of counsel, is the refusal of the trial court to permit the filing of a demurrer to the complaint, following an amendment thereto made during the trial.

The amendment stated no new cause of action, and in no respect misled the appellants.

VOL. 137—40

As stated in *Town of Martinsville* v. *Shirley*, 84 Ind. 546, "he simply stated more fully and clearly than he had previously done" one fact in connection with his cause of action.

It would have been prejudicial to the appellants' rights to have permitted the introduction of a new cause of action or to have deprived them of the benefits of their demurrer to the complaint, but where the amendment is only formal, and does not introduce a new cause of action, so as to render a disturbance of the issues necessary, the defendant obtains all the benefits of the ruling upon demurrer, for the complaint will be treated, in this court, as if the formal matter had been stated when the demurrer was filed and ruled upon.

While the appellants indulge in numerous criticisms of the causes of action stated in the complaint, they do not directly assail its sufficiency to state a cause entitling the appellee to some relief. If, as insisted by counsel, there could be no recovery for tearing down the first substructure, there is little doubt that under the contract sued upon, a cause of action existed for building one of the substructures, regardless of any conclusion as to the power of the superintendent to bind the county for extra work, or the unnecessary destruction of work done under and according to the written contract.

Before considering the causes for a new trial, it seems important that we should determine the right of the appellee to recover for the alleged extra work in tearing down the first substructure and in building the second. As already stated, it was the theory of the appellee's action, that he had completed the first substructure in all respects according to the plans and specifications, and that the agent of the appellant, for deficiencies existing by reason of the insufficiency of the plans and specifications, and not from a noncompliance with such plans

and specifications, ordered and required the appellee to take it down, and further directed and required another to be built suitable for the purposes intended, which second structure was accepted by the appellants.

If this theory of the complaint is supported by the evidence, why should the appellee have failed to recover? The appellees urge that the superintendent had no power to bind the county by such orders; that, therefore, the destruction of work, done in compliance with the contract, was as if voluntarily done, and that as the contract provided for the removal, by the appellee, of all defective materials and workmanship condemned by the engineer, at his own expense, and no provision existing in the contract, for the removal of materials and workmanship in accordance with the contract, there could be no recovery.

The question of the power of those chosen by boards of commissioners to superintend the construction of public works, and to direct that additional labor and materials, not included within the written contracts, be done and furnished, and to bind the counties by such action, is not new in this State. *Board, etc.,* v. *Byrne,* 67 Ind. 21; *Bass Foundry, etc.,* v. *Board, etc.,* 115 Ind. 234; *Board, etc.,* v. *Hill,* 122 Ind. 215; *Board, etc.,* v. *Motherwell Iron, etc., Co.,* 123 Ind. 364.

These decisions sustain the conclusion that such superintendents may bind the county for work done and materials furnished beyond the provisions of the contract, and that in the absence of any agreement as to the cost of such additional labor and material, the recovery may be for the reasonable value thereof.

The case of *Board, etc.,* v. *Hill, supra,* is, in most respects, similar to the case before us, the only difference in principle being that the original work was destroyed by flood instead of becoming deficient through the in-

sufficiency of the plans and specifications prepared by the agent of the county and adopted by the board. Recovery was maintained for the original work under the contract and for the second work, as ordered by the superintendent and a single member of the board, upon the implied contract and for its alleged reasonable value.

In *Bass Foundry, etc.,* v. *Board, etc., supra,* it was said: "When a corporation has received the money or property of an individual, under color of authority, and has appropriated it to its necessary and beneficial use, it will not be heard to assert its want of power to pay the value of what it has received and still retains."

With equal force, we think, it may be said that where the county procures the work contracted for and discovers its insufficiency it may not obtain the labor, money, and material of another in furnishing that which is sufficient to answer the purposes of the county and then deny its obligation to pay for it.

As said in *Board, etc.,* v. *Byrne, supra:* "Such authority in the superintendent is necessary for the county, in order that the structure may turn out to be substantial and lasting; and it is proper, in order that the contractor required to perform the extra work may have a remedy therefor. If it should be foreseen by the superintendent, after the letting of the contract, that the work, performed as contemplated by it, would be insufficient or defective, the county might be greatly the loser, if he could not require such additional work as would make it substantial and permanent, and bind the county therefor."

The contractor's obligation is to perform the work in the manner provided by the plans and specifications. If, when he has done this, it is ascertained that the substructure is not of sufficient strength and capacity to support the superstructure, shall he be required at his own expense, in the absence of such a provision in the

contract, to remove the insufficient substructure? If the commissioners have made the mistake of procuring an unsubstantial work, the contractor, who complies with his contract in executing the work, can not be made to suffer the consequences of that mistake, and much less can he be made to construct without additional compensation, a structure not contemplated by his contract and of a more substantial and expensive character.

The labor in taking down the unsubstantial structure, in such a case, is not for the breach of his contract, but for the benefit of the county, that the materials may be used in the substantial structure and save the cost of new material therefor.

It is next urged that the court erred in admitting evidence of the value of the extra work and materials sued for, first, because the values of the work were provided by the written contract, and, second, because the contract provided that payments should be made upon measurements and estimates by the superintendent. The first of these objections has, practically, been decided in the holding that the contract did not provide the compensation for extra work and materials, and that the recovery was upon the *quantum meruit*, at least for all such as was different in character from that specially contracted for. The same may be said of the second objection, and it may be added that if the written contract did not govern this work the provision as to measurements and estimates could not control the appellee's rights. The fact that a superintendent may have regarded the appellee's rights as fully embraced within the terms of the written contract, and may have failed or refused to measure and estimate the work not within the contract, as we have held, would certainly not defeat the appellee's recovery. Even if the stipulation had related to the extra work, the failure of the engineer would not

have defeated a recovery of the correct amount. *Kistler* v. *Indianapolis, etc., R. R. Co.,* 88 Ind. 460.

The appellants complain of the refusal of the court to give to the jury the following instructions:

"28. It is averred in the plaintiff's complaint, and admitted by him on the trial, that the work and labor and materials sued for were performed and furnished under the contract sued on, and made a part of this complaint. I therefore instruct you that the plaintiff can in this action only recover upon and according to the estimate of the engineer, Craven Smith, and his final estimate and measurement, if any, is binding upon the plaintiff.

"No. 11. I instruct you that it was mutually agreed in the contract sued upon that all payments for the work should be based on measurements and estimates made by the engineer in charge of the work, and upon no other, and that the plaintiff can not recover for any work mentioned in his complaint unless he shows to your satisfaction that measurements and estimates for the same were made before this action was begun, by the engineer in charge of the work; and I further instruct you that by the contract it was agreed that in no event should any greater price or sum be paid for the work therein specified than the prices therein fixed therefor, and for such work, or work of like kind, though extra, the plaintiff can recover no greater price than is fixed by the contract or by the proposal attached thereto and made a part thereof.

"15. It is averred in the complaint, that the pier and abutments, as first constructed by the defendants, was approved by the engineer in charge of said work, and that he reported to the defendants that said work was completed according to the contract.

"The court instructs you that these allegations are

material as pleaded, and if the truth thereof has not been established by a preponderance of the evidence, the plaintiff can not recover therefor in this action."

As to the instruction numbered 28, when we recall the theory of the complaint, it will be seen that to have given it, would have misstated the cause of action, besides, as we have shown, it was not correct to limit the appellee's recovery to the estimate of the engineer.

Instruction numbered 11 was correctly refused for the reason given, that the appellee's recovery could not be limited, even by contract, to such arbitrary estimates as the engineer might make, nor by his refusal to make any estimate of the value of work for which the county might otherwise have been liable. As to that element of the instruction, that the price of the extra work should be the price fixed by the contract, the court charged the jury, of its own motion, that the contract price, so far as the work was of the character of that contracted for, would govern. For work of a different character, it is manifest that the contract provided no compensation, and the law would fix that compensation at its value as proven. *Board, etc.,* v. *Byrne, supra.*

It was alleged in the complaint that the superintendent had approved the first substructure as completed, and that said substructure had been completed according to the requirements of the contract. It is complained, therefore, that the court erred in refusing said charge numbered 15, but we find that the court gave to the jury a charge that the issue was not whether the superintendents condemned or approved the work claimed to have been in compliance with the contract, but whether it had been shown by a preponderance of the evidence that the same was actualy done according to the requirements of the contract.

In view of what we have said as to the theory of the

action, and as to the liability of the counties, we think it very clear that the charge given was correct, and was all that the appellants could have desired upon that question. We find further, that in answer to the appellants' twenty-fifth interrogatory the jury found that the appellee did "construct such work in substantial compliance with the requirements of his contract with the boards of commissioners."

An adverse report by the superintendent could not have prevailed against this finding. It could not have been the purpose of the contract, and is certainly not the law, that the report of a superintendent of construction should unjustly defeat the contractor who has executed his work as he has agreed. If this is true, the view taken by the lower court in the charge referred to was correct, and the fifteenth instruction of appellant was correctly refused.

The evidence discloses an entry upon the records of the appellants, made December 19th, 1889, in which it is stated that the commissioners had that day examined the abutments and pier then being constructed, and were satisfied that the work was not being done according to the contract. It is then ordered that the engineer and superintendent be removed from their trust, and that Craven R. Smith be appointed to superintend said work. Said entry then continues:

"And comes now John C. O'Connor and asks the boards for an allowance of the additional sum of three thousand dollars upon his contract with said boards, and in consideration thereof surrenders to said boards all his right, title and interest in the material furnished by him and used in the construction of the approaches, foundations, and stone masonry in the bridge mentioned in said contract, and agrees in good faith to take down and rebuild, as provided in said contract and according to the

terms thereof, and to the satisfaction of the engineer, all work that may hereafter be found to be defective. And comes now said Craven Smith, engineer and superintendent, and files his estimate in writing of the value of such materials and work heretofore done by said O'Connor, in these words, to wit:

"'To the Honorable Boards of Commissioners of White and Carroll counties, Indiana:

"'This certifies that John C. O'Connor, contractor for the substructure of a bridge over the Tippecanoe river, on the line dividing White and Carroll counties, Indiana, has performed work and furnished material on his contract of the value of five thousand dollars, two thousand dollars of which has been paid; and the payment of the remaining three thousand dollars I would respectfully recommend, provided that the said John C. O'Connor will undertake, in good faith, to take down and rebuild, as provided in the original contract, to the satisfaction of the engineer, all work that may now or hereafter be found to be defective.'

"From which it appears that such materials and work are of the value of five thousand dollars. And said boards, being duly advised, do find that they may, with propriety, make such allowance, upon the terms and conditions above stated. The said John C. O'Connor is, therefore, allowed the said sum of three thousand dollars, and the auditor of White county is directed to draw his warrant upon the treasurer thereof for the sum of fifteen hundred dollars, and the auditor of Carroll county is directed to draw his warrant for a like amount upon the treasurer of Carroll county, payable to said John C. O'Connor."

It is now claimed that the court erred in refusing appellants' instructions, numbered 14 and 27, in effect, charging that the entry and the facts therein stated

estopped the appellee to claim anything for the tearing down of the first substructure. The entry, it is claimed, became a part of the contract between the parties, and that it was the duty of the court to instruct the jury as to the proper construction of the contract. As a contract waiving any claim for labor in the original construction of the abutments and pier, it is not pleaded; and to entitle the appellants to assert it as an estoppel, it should have been set up by way of answer.

But from our construction of the entry, if O'Connor was bound by it, no estoppel is created and it does not affect his right of recovery for any work not contemplated by the original contract. By it he releases the material in the structure. Being paid for it, he could not again claim pay for it, and neither lost nor gained rights by so doing. The work agreed to be taken down and rebuilt was such defective work as, by the terms of the contract, he had been required to take down and rebuild. The work done and materials furnished were of the value of five thousand dollars; he had received two thousand dollars, and the three thousand dollars allowed constituted the balance owing upon the estimate then made. His contract obligation upon this subject was as follows:

"The contractors will remove, at their own expense, any materials disapproved by the engineer or his assistant, and will remove and re-execute, without extra charge, and within such time as may be fixed by the engineer, any work found to be unsoundly or improperly executed. In case of the neglect or refusal of the contractor to take down and rebuild any work condemned as defective within the time fixed by the engineer, he shall have full power and authority to employ other persons to do the work and deduct the cost thereof from any estimate due or to become due the contractor."

It was not, by any reasonable intendment, the purpose of this provision of the contract to require the contractor to destroy, at his own expense, structures erected under and in compliance with the contract. Any such construction would be unconscionable in permitting the superintendent to require of the builder more than was contemplated by the plans and specifications, and to insure the structure against such defects as might arise from the insufficiency of the structure, not on account of the materials or workmanship employed, but from the inadequacy of the plans and specifications or the unsuitable situation of the structure, over neither of which he had control.

We have already said that the theory of the complaint, and the theory upon which the cause was tried, was that the appellee did not contract to remove and rebuild work other than such as might be defective from the materials used or the workmanship employed. Treating the entry quoted as a contract, the terms of which were to be added to the original contract, and we are unable to see how any new feature was engrafted upon the original contract. The instructions referred to were, therefore, properly refused.

It is further contended that the appellee was permitted to testify and to prove by other witnesses the agreement between the appellee and the commissioners, as contained in the entry above quoted, and that appellants were denied the privilege of proving, by parol, their version of said agreement. The citations to the record, by the appellants, do not sustain the claim that the appellee was permitted to prove by parol the agreement mentioned. The evidence of the witnesses named related to the filing of a report of the construction of the work as made by Ellis, the superintendent, and as to what became of that report.

The entry containing the agreement referred to, was not controverted, and the appellants could not have been permitted to contradict it; nor could oral evidence of the agreement, of a cumulative character, have added to its strength. We have considered the entry in the light of the agreement claimed by the appellants, and find that the offered parol evidence could have added nothing which might have changed our view of that agreement.

It is also complained that the court refused to permit a witness to testify as to the cost of certain stone used in the original substructure, as it was supplied to the appellees at the quarry. The claim for the offered evidence was that it tended to prove the inferior quality of the stone. There was no error in this ruling. The price at which the stone was purchased would not furnish any light upon the subject of its suitableness for the purposes for which appellee employed it.

Appellants say the court erred in permitting the report of Ellis, above mentioned, to be read in evidence, because, as claimed, it was never filed. The evidence was that it was delivered to the auditor during the session, and in the presence of the boards; and that before the file mark was placed upon it an attorney for the appellants took it into his possession. It has often been held that papers are constructively filed when delivered to the proper filing officer for that purpose. See *Hull* v. *Louth, Guar.*, 109 Ind. 315; *Powers* v. *State*, 87 Ind. 144.

Thomas Baker, a witness for the appellants, was asked to "state how much of this stone, if any, was composed of odds and ends?" and he answered, "It was all good bridge stone, *such as we always sell to other contractors of bridges.*" Of this answer the appellants moved to strike out that portion which we have italicized, and the court overruled the motion. The habit of the stone company was immaterial and certainly harmless. The answer

that it was "good bridge stone" received no additional force from the voluntary and immaterial statement of the company's habit.

Numerous questions asked of a witness for the appellee, related to the values of the alleged extra work, and are complained of here. We have sufficiently indicated the propriety of these inquiries by the holding that the value of such work was not necessarily fixed by the written contract. The appellants moved to suppress and strike from the deposition of their witness, Bierman, his answer to this question: "What do you know about the east abutment falling down?" the answer to which was, "well, I know that the work was not heavy enough to hold the bank of dirt that went up against it." The objection to the answer is that it evades the question, and seeks to shield the appellee. We can not agree with the suggestion that the answer evades the question. The question is general in form, asking for the knowledge of the witness "about the east abutment falling down." If he knew the cause of its falling, that was within the scope of the inquiry. It can not be objected that the answer was favorable to the appellee, nor can one strike from a deposition in his own behalf such parts as may not support his case if they are within the issues and are properly responsive to the questions asked by him.

Objection is made to the ruling of the court in permitting the appellee to detail certain expressions of approval of the work on the first substructure during its progress, by certain members of the appellants. The question asked was: "What did they say about it?" The objection in the lower court was that "the question was improper, and the answer will be hearsay and not by leave of the defendants."

The point made in this court is that the statements and declarations of individual members of the boards, made

out of the presence of all of the members, and while they were not in session, could not bind the counties. While we do not intimate that the ruling was erroneous, we feel safe in the conclusion that the objection made in the court below did not bring before the court the particular objection urged in this court. The objection was too general and indefinite to suggest the particular point now urged. *Indiana, etc., R. W. Co.* v. *Cook*, 102 Ind. 133; *Grubbs* v. *Morris*, 103 Ind. 166.

It is also objected that the court permitted Ellis to testify, as a witness for the appellee, that Mr. Sellers, attorney for White county, told him he could make no report as superintendent of said work. The objection made in the lower court is subject to the same criticism made against the objection last considered. Besides, we are unable to think that the testimony could be prejudicial to the rights of the appellants, even if not strictly competent.

The admissibility of the report of Craven R. Smith, who had acted as the superintendent of said work, made to the appellants, and giving the character and progress of the work, is questioned by the appellants. It is severely criticised for its bias, its great length, the conceit of its author, the treatment of impertinent questions and its tendency to prejudice the appellants' defense, but no legal objection to its competency as the expression of the duly authorized agent of the counties is urged. The extent to which it confirmed the compliance with the terms of the written contract, and the credit which should be given it, were questions for the jury.

Instruction number one, asked by the appellee and given by the court, is complained of. It recited several provisions of the contract between the parties as to the inspection and rejection of the work by the boards and by their superintendent. It construed these provisions

as requiring the commissioners, if they had a superintendent and would exercise their privilege of inspecting, to be present as material was furnished or labor expended and pass upon the quantity and quality thereof in approval or disapproval. But the jury were advised that having such superintendent, the commissioners could waive their right to inspect and reject the work. The instruction then proceeds: "Should the boards appoint a superintendent to take charge of the work, and he accept the appointment, and qualify, and the boards direct him to take charge of the work, and he is present, examines the material and approves it, and should he be present during the execution of the work, and direct how the work is to be done, and the contractor does the work in accordance with the direction of the superintendent, in his presence, substantially according to the plans and specifications, and the boards fail to be present, but leave the entire matter with their superintendent, then I charge you, gentlemen of the jury, that the boards of commissioners would waive their right to pass upon the quality either of the material or workmanship, and they would be bound by the acts of their superintendent, and they could not, after the completion of the work, condemn either the material or the workmanship; unless you find that there was collusion or a fraudulent agreement entered into between the plaintiff and the superintendent, as charged in the third paragraph of answer."

The contention is that the commissioners could not be deprived of the right to condemn work or materials even when completed; and that it was error to instruct the jury that the commissioners were required to be present as the work progressed, and condemn or approve it. In the absence of the condition which accompanies this statement, we should incline to the appellants' view; but when the commissioners have an authorized superintend-

ent upon the ground watching the progress of the work, and, when it is done pursuant to his directions, with his approval and in substantial compliance with the plans and specifications, the commissioners not only waive their right to pass upon the workmanship and materials, but also their right to condemn either, unless there is collusion between the contractor and superintendent. True the taxpayers have rights that should be protected not only against the fraud of superintendents, but also as against a noncompliance with contracts for public works, and the contractors have rights that the chosen servants of the taxpayers may not abuse.

When the work is done not only in substantial compliance with the contract, but is done as directed by a superintendent chosen by authority of the law to represent the taxpayers instead of the commissioners, it is too late to permit the commissioners to condemn that which has been so done, and by condemning possibly require the work to be disturbed to its foundations, entailing not only delays, but large expenditures upon the contractor, when, if they or their servant had disapproved when the foundation work was being done, instead of approving it by such agent, no hardship would have resulted. We consider the instruction correct, not only as to the objection suggested, but that it covers properly the additional objection that it omits the contingency of fraud between the superintendent and the contractor as alleged in the appellant's third paragraph of answer.

Instruction numbered two as given on the request of the appellee is complained of as in violation of the contract, in that it directed the jury that a foundation without timbers, put in over the protest of the contractor, but by the requirement of the superintendent, and in the presence of, and with the knowledge and concurrence of, the commissioners, though so deficient as to settle

and cause the abutment, when completed, to fall, could be recovered for, when, as urged, it was stipulated in the contract that the excavations should be made to such depth as the engineer might determine to insure a safe foundation. The claim is, in effect, that the superintendent with the knowledge and concurrence of the commissioners could not, as against the authority of the engineer, direct the laying of the foundation without timbers. The authority of the engineer was as to depth of excavations, and not as to materials composing the foundations. If it had been otherwise, we doubt the validity of the claim that the power directing the work was not superior to that of the engineer.

It is also insisted that the instruction erroneously left from consideration the element of fraud charged in the third paragraph of answer. The presence of the protest on the part of the contractor, one of the necessary parties to any such fraud, against the manner of doing the work, and the presence at and concurrence in work of the commissioners, parties over all in authority and not alleged to be participants in the fraud, were circumstances included in the instruction, and were not consistent with the possible presence of fraud in the manner of doing that part of the work. The jury could not have understood that liability could be found in the presence of the fraud alleged.

Appellee's instruction, numbered three, it is claimed, invades the province of the jury, and leaves nothing for them to decide except the price of tearing down and rebuilding the abutments, assuming the liability of the appellants for bad workmanship and defective materials, and assuming that the appellee had not agreed, on the 19th day of December, 1889, to take down and rebuild the work at his own expense.

The appellant's learned counsel evidently overlook the fact that this instruction, following immediately instruction numbered two, from its language continues the presence of all the conditions stated in said instruction preceding it.

It is as follows: "And if you further find that the superintendent, acting under orders from the defendants directed the plaintiff to take down said abutments and remove material, the plaintiff would be entitled to recover for such. If the price for such work is not fixed in the contract, he would be entitled to recover what it was reasonably worth. If the price is fixed by the contract, then he would be entitled to recover only the contract price, unless contingencies arose not contemplated by the contract, which made it more expensive for the plaintiff to do the work."

It is manifest from what we have said of the theory of this case, as made by the pleadings, and the introduction of the evidence, that the instruction given, when read in connection with the instruction immediately preceding it, is not erroneous in assuming the matters urged against it. The claim that it assumes the absence of an estoppel by the agreement of December 19, 1889, is well founded, since, as we have held, that agreement did not amount to an estoppel, but was only, in effect, the contract already existing.

The appellee's seventh instruction advised the jury that a recovery could not be defeated upon the ground alone that the abutments cracked and one fell down, if it appeared that they were constructed as directed by the superintendent, and cracked and fell because of the manner of construction. Objection is made that this instruction directed the jury to find for the appellee regardless of the allegations of the answer that the insufficiency of the work was due to the collusion of the appel-

lee and the superintendent.   Such is not the reasonable construction of the instruction standing alone, and certainly not when taken in connection with the other charges given.   The burden of the issue of fraud rested upon the appellants, and in the absence of a finding in their favor upon that issue, or, confined to the one question of the falling by reason of defects caused by the superintendent's erroneous direction, the jury could not find against the appellee.   The instruction was of a negative character and was not required to affirm conditions which, if the instruction had affirmed the right of recovery, should have been stated to avoid assumptions unfair to the appellants.

The action of the trial court in giving and in refusing several other instructions asked is complained of, and we have carefully examined each and all of such, and have carefully examined all of the instructions given.

We find that the case, upon the theory adopted by the parties, was fully and fairly presented to the jury by the charges given, and in no instance was a proper charge asked and refused unless its equivalent was given.

The length to which this opinion extends renders it impossible to follow in detail the numerous arguments of appellants' very learned counsel upon the instructions to which we refer, several of them having already been considered by us.

We pass now to a consideration of the contention that the answers to special interrogatorias are in irreconcilable conflict with the general verdict.

It is insisted that answers to interrogatories numbered 3, 4, 6, 10, 13 and 26, find a noncompliance with the requirements of the written contract in the execution of the first substructure by the appellee as follows:   "(1) That the vertical joints of the face of such stone were not laid not less than twelve inches in from the face; (2) that

all the joints of such stones were not laid not more than five-eighths of an inch in thickness; (3) that all of the joints of the stones were not broken no less than twelve inches; (4) that all of the stretchers used in the work did not have as much bed as face; (5) that all of the headers used in the work were not of similar size with the stretchers used; and (6) that the plaintiff did not excavate the foundations for the abutments, until he came to a bed of solid blue clay.''

The facts so negatived by the answers referred to were required by' the letter of the contract to be affirmed to constitute a compliance with such contract. The extent of the departure is not found in any instance, and we are not able to say that it was material.

Interrogatory numbered 25, and the answer thereto, are as follows: ''Did the plaintiff construct such work in substantial compliance with the requirements of his contract with the boards of commissioners? Ans. Yes.''

An immaterial departure would not raise an irreconcilable conflict; but suppose we should find that the answers to interrogatories 3, 4, 6, 10, 13 and 26 stated material variations from the obligations of the contract, we would then be confronted with the answer to interrogatory numbered 25, which would stand in antagonism to such other answers.

If special findings are not consistent with each other, and are contradictory, they will not control the general verdict. *Grand Rapids, etc., R. R. Co.* v. *McAnnally*, 98 Ind. 412; *Wabash R. W. Co.* v. *Savage*, 110 Ind. 156; *Chicago, etc., R. R. Co.* v. *Ostrander*, 116 Ind. 259; *Grand Rapids, etc., R. R. Co.* v. *Ellison*, 117 Ind. 234; *Kirkpatrick* v. *Reeves*, 121 Ind. 280; *Gates* v. *Scott*, 123 Ind. 459.

The appellants further insist that the interrogatories are in conflict with the general verdict in that they find

that neither the superintendent nor engineer, Bushnell, nor the joint action of the appellants approved the masonry as constructed in 1889. We have already considered the effect of the failure to approve the work and its effect upon the right of recovery, and in view of what we have said the conflict is not, in that respect, irreconcilable with the general verdict.

A witness for the appellee was impeached by the proof of statements made out of court in conflict with his testimony as a witness, and the appellee was permitted to prove the general reputation of the witness for truth and veracity in the neighborhood in which he lived. Appellants concede that this permission was authorized by the rulings of this court, but it is urged that the courts of other States hold to the contrary, and that our cases should be overruled. We are unable to concur in this demand, as the rule is not only reasonable, in our judgment, but it has prevailed in this State for more than twenty-five years. *Clark* v. *Bond*, 29 Ind. 555; *Clem* v. *State*, 33 Ind. 418; *Louisville, etc., R. W. Co.* v. *Frawley*, 110 Ind. 18.

Appellants' counsel occupy great space, in their unusually elaborate brief, in a discussion of what they have called the misconduct of appellees' counsel, before the trial courts and jury, in asking of two witnesses whether a certain stipulation in the contract in suit had a technical or peculiar meaning in the counties of White and Carroll, and in each instance stating an offer to prove what such technical meaning was, after the court had sustained the appellants' objection to the question by which the matter offered was sought to be elicited.

It is urged that a statement of facts proposed to be proven, when made in the presence of the jury, is not only prejudicial to the rights of the parties, but is one which should be classed with improper arguments of

counsel. It is not only the privilege, but the duty, of counsel to state their offers to prove, and this may be done in as many forms as necessary to present the question in any phase favorable to the party offering it. The offer is, of course, for the information of the court, and not for the jury. It may be required by the court, on motion of a party, by rule or order of court, to be stated out of the hearing of the jury.

No effort was made, in this instance, to require the offer to be stated without the hearing of the jury, and counsel for appellee was guilty of no misconduct in violating any order of the court, or in disregarding any right of the appellants. The practice pursued is not uncommon in the courts of this State, and we feel safe in saying that the intelligence of Indiana juries is not imposed upon by the custom. The practice is probably subject to abuse, and is necessarily under the control of the trial court. When imposition is apparent from the conduct of counsel, the court may check it, and has power to prevent it. We are not impressed that appellee's counsel was guilty of misconduct.

Having considered carefully all of the numerous questions so fully and ably presented by counsel, and finding no error for which the judgment of the lower court should be reversed, the same is in all things affirmed.

Filed Dec. 21, 1893.

## ON PETITION FOR A REHEARING.

HACKNEY, J.—The first question argued upon the petition for a rehearing is that the judgment is excessive. Counsel are in error in the assumption that this question was argued either in the briefs or the oral argument upon the original hearing upon any other theory than that no recovery could be sustained for the building and tearing down of the first substructure. However, if we believed

that the recovery was excessive, we would not incline to stand upon the technical rule of practice and deny the reduction to a proper amount, but we have considered the question, and find that if we were right in the holding that it was proper to permit a recovery for extra work and materials in tearing down the first work and constructing the second, the verdict for $11,314.94 was authorized by the evidence, if we include $258.51 for interest from the completion of the work until the finding by the jury. A calculation discloses that the sum so included, probably as interest, was not excessive, but was at six per cent. for a shorter period than was allowable. An error into which appellants seem to have fallen is in assuming that the theory of the complaint adopted the report of the superintendent upon the completion of the second structure. If the complaint had so proceeded, the recovery might have been excessive.

Again it is insisted that the superintendent had no power to direct the tearing down of the first substructure, and the building of another at the expense of the counties. It is conceded, however, that under the authorities cited in the original opinion, such power existed where the work was that of a single county, but it is said that there is such difference between the statutes relative to the appointment and powers of superintendents, where the work is by one county or by two or more counties, that the authorities so cited do not apply here. The statutory provision for the appointment of superintendents by one county is as follows: "For the erection of any such bridge, the said board may appoint one or more discreet persons as superintendents thereof." R. S. 1881, section 2888. While that for the appointment of superintendents for the two counties is as follows: "It shall be the duty of said boards of county commissioners, while in joint session, to appoint one or more persons as

superintendents, who shall have full control and supervision of the erection and repair of said bridge, subject, however, to such regulations as such boards of county commissioners may determine upon." R. S. 1881, section 2881. It is apparent that the extent of power is not indicated by the first quoted provision, while by the second it is indicated that he shall have "full control and supervision," unless restrained by some regulation of the boards. We have no doubt that this limitation should also be implied from the first of these provisions, and that if any substantial difference exists between the two it is in favor of the second, where the greater difficulty lies in getting together the members of the two boards. The rules and regulations under which the boards of two counties may build bridges are the same as those under which one county may build, as expressly provided in section 2880, R. S. 1881. The authorities, therefore, sustain the construction given the action of the superintendent by the original opinion.

It is insisted that we should have ordered a new trial upon discovering that the answers to interrogatories were conflicting, and to this insistence are cited *Staser* v. *Hogan*, 120 Ind. 207, and the *Chicago, etc., R. R. Co.* v. *Kennington*, 123 Ind. 409. The character of the cases cited is best made known by the following from the latter: "The rule upon which this court proceeds is, that if the general verdict is supported by the evidence, a motion for a new trial will be overruled, which assigns as a reason that it is not so supported, without regard to the manner in which interrogatories may be answered. *Staser* v. *Hogan, supra.* If it were found that answers to interrogatories were inconsistent with each other, and were not supported by the evidence, the fact might be influential in inducing the court to grant a new trial in order to prevent a failure of justice. It

is possible that a case might arise in which there would be such a manifest repugnancy between the answers to interrogatories as to indicate a disposition on the part of the jury to distort the evidence in order to make a case favorable to one party or the other. Where answers to interrogatories, fairly put, make such a purpose clearly apparent, there are authorities of great weight which hold it to be the duty of the court to set the verdict aside and award a new trial." The conflict here is suggested in the original opinion, and is not such as to make manifest such disposition on the part of the jury.

Other questions are discussed, but were fully considered and passed upon in the original hearing.

The petition is overruled.

