## City of Covington v. South Covington & Cincinnati Street Railway Company.

(Decided March 5, 1912.)

### Appeal from Kenton Circuit Court (Common Law and Equity Division).

1. Contracts—Construction of.—In construing a contract the court will look to the whole instrument, and the words of one clause will be read in the light of the other provisions of the contract.

2. Intention to Supersede Prior Contracts.—Where on the whole contract it appears that it was intended to supersede prior contracts between the parties, the word "bonus" in a contract between a city and a street railway company will be construed to include sums which under previous contracts the company was to pay for the enjoyment of its franchise.

3. Written Contracts for Money—Interest Allowed.—Interest will be allowed on money due under a written contract and not paid when due.

4. Installment Not Sued for.—An installment not sued for in an action may be recovered in a subsequent action.

S. D. ROUSE and CHARLTON B. THOMPSON for appellant.

ERNST and CASSATT & COTTLE for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—Affirming.

The City of Covington by an ordinance of December 15, 1864, provided for the granting of the franchise for street railways, and prescribed how the franchise should be exercised. Among other things it was provided that all contracts made under the provisions of the ordinance should be for a term of twenty-five years, and that the company that would pay into the city treasury the largest bonus should have the franchise. Under this ordinance the bid of the Covington Street Railway Company was accepted on February 3, 1865, that company agreeing to pay into the city treasury the sum of $250 a year as a bonus. By an ordinance of December 13, 1869, the city granted to E. F. Abbott and his associates the right to construct and operate a street railway on certain streets of the city not occupied by the Covington Street Railway Company. One of the conditions upon which this grant was made was that the grantees would pay into the treasury of the city on the first day of January in each year the sum of $25 as a license tax for every car run on its road. Abbott and his associates deeded their property to the Covington & Cincinnati Street Railway Company on May 1, 1875; and it deeded the property to the South Covington and Cincinnati Street Railway Company on December 20, 1876. About the year 1882, the Covington Street Railway Company failed. Its property was sold at a foreclosure sale and purchased by the South Covington and Cincinnati Street Railway Company. It was provided in both the franchises referred to that the grantees should pay for certain repairs of streets, and what this amounted to annually gave rise to some disputes between the city and the company. On July 7, 1887, the city passed an ordi-

nance which was accepted by the company, providing in part as follows:

"Said company shall not be required to repair or pay for the repair of streets, but in lieu thereof it shall pay into the city treasury of Covington annually, the sum of $2,600.00 payable in equal installments, two in number, between the first (1st) and fifteenth (15th) day of June and December of each year, provided that said company shall not be relieved from its obligations to repair and renew the streets of Covington, as in the ordinance provided, until the extensions herein named are made and in actual operation."

The franchise which had been granted the Covington Street Railway Company being for twenty-five years expired in the year 1890. It was insisted by the South Covington and Cincinnati Street Railway Company that its franchise under the Abbott grant, was perpetual and the city controverting this view, a suit was brought by the company in the United States Circuit Court to obtain a judgment that it held a perpetual franchise. In this condition of things, an agreement was made between the city and the company on October 7, 1892, section 9 of which is in these words:

"The said company shall pay to the said city of Covington each year during the first five years of the period of this contract the sum of $2,600.00 and each year during the second five years of the period of this contract the sum of $4,000.00; and each year during the third five years of the period of this contract the sum of $5,000.00; and each year during the fourth five years of the period of this contract the sum of $6,000.00; which yearly payments shall be in lieu of any and all car license or bonus."

The agreement also required the company to do a number of things in addition to what it had done. The contract contained among others these provisions:

"The said street railway company shall, at its own expense lay such foundation under its tracks, over which cars are operated by electricity as aforesaid, as have been recently under and along Madison avenue, from Fourth to State streets, and the work shall be done to the entire satisfaction of common council, and the said company shall put back any street from which its tracks are removed, or on which its tracks may be laid, in as good condition as the rest of the street. The city reserves the right to change the grade of the streets over which said

railway routes are located, both as to curve and crown of the same, and the said railway company shall defray the expense, at any time the council may direct, of lowering or elevating such tracks so as to conform to said change of grade, and place a foundation such as is hereinbefore provided for.''

''That the said street railway company shall release the city of Covington from any and all claims for damages, loss or expense incurred by it for or on account of the said street railway company in removing or relaying its tracks on the streets in the city of Covington, now being or hereafter to be made with asphalt, under the provisions of a resolution passed by the common council of the said city on the fifteenth day of October, 1891, requiring said improvements to be made by said street railway company, and the said street railway company shall continue to remove and relay its tracks and place the foundation as required, at its own expense, under and over the streets now ordered to be improved with asphalt until the said work is complete.

''In consideration of the said street railway company removing its tracks from Scott street, Powell street, Seventeenth street, Cooper street, Banklick street, and Fifteenth street, and double tracking Greenup street and State streets, as hereinbefore provided, the said city of Covington agrees and covenants with the said South Covington and Cincinnati Street Railway Company, its successors and assigns, that it will not grant to any other company or companies, corporation or corporations, association or associations, individual or individuals, any right, privilege or franchise to lay, maintain or operate its street railroad or street railroad track, or any other system of passenger traffic, on or over the streets so abandoned without giving to the said street railway company the same rights and privileges that are enjoyed by any other company, corporation, association or individual on the said streets, or any of them.

''The right to tear up the tracks, or have the same done, for the purpose of improving or repairing sewers or laying gas or water pipes, or repairing the same, or making house connections with the same, or making any improvements, or doing any work which necessitates the tearing up of tracks, or displacements of wire, or removing of poles, is reserved to said city, and may be exercised by it after a reasonable notice to said company, and

the said company shall   at its own   cost, replace  said tracks, wires, poles, etc.

"The said street railway company shall, before this ordinance takes effect and before said company acquires any rights under this ordinance, file with the city clerk a bond, to be approved by the common council, with resident State sureties, in the sum of $25,000.00, that it will save the city harmless from any and all loss or damage or cost to persons or property by reason of the construction and operation of said railway, and also conditioned for the faithful performance and carrying out of all the provisions of this ordinance."

After the making of this contract the company paid the city for five years annually $2,600.00, and for the next five years, $4,000.00; in the third  five years $5,000.00, with the exception of one payment  of $2,500.00, which will be noticed later.   This suit was brought by the city against the railway company on February 9, 1907 or nearly 15 years after the contract was made, claiming that the company owed it $2,600.00 a year under the ordinance of July 7, 1887.   The circuit court dismissed this part of the petition, and the city appeals.

It is insisted for the city that section 9 of the contract of October 7, 1892, provides that the payments therein provided for shall be in lieu of any and all car licenses or bonus; that this excludes pay for the repair of the streets as provided in the ordinance of July 7, 1887, and that this much of that ordinance  is therefore still in force.   It is insisted that the word "bonus" will not include pay for the repair of streets.   But the agreement which fixed the sum to be paid for the repair of streets at $2,600.00 a year  required the company  to pay the money although no streets were repaired, and so far as this sum was in excess of what was necessary to repair the streets, it was a bonus.   In Webster's Dictionery the word "bonus" is thus defined:

"Premium given for a loan or for a charter or other privilege granted to a company."

The requirement that the company should pay for the repair of the streets was a part of the premium it paid for the grant of its privileges.  A contract is to be construed as a whole and not by a single word in it.  The contract of October 7, 1892, is a very long one, and was, we think, intended to supersede all former contracts between the city and the company, and to be as to the pay-

ment of money to the city the entire contract between them. The company by that contract was required to make numerous improvements and it was conceived that it would be better able to pay after these improvements were made, so the sliding scale of payments was agreed to. The $2,600.00 per annum which it was to pay for the first five years is precisely the same and payable at the same time as it was paying under the old contract, and it is inconceivable that in a contract so minutely drawn the parties should have provided for the payment of one $2,600.00 per annum, and should be silent as to another $2,600.00 which they expected to be paid. Not only so but the contract provides that the company shall pay for certain repairs of streets, and that the city may do certain things in repairing the streets at the expense of the company. When the contract of October 7, 1892 was made, the amount due under the old contracts was settled to that time and paid, and from that time until the bringing of this suit no claim was made by the city that any money was due it under the ordinance of 1887. Lord Erskine once said, "If you will tell me what the parties have done under a contract, I will tell you what it means." Both parties here for fifteen years put the same construction upon this contract and taking it as a whole we cannot see how a different construction can properly be put upon it for it was manifestly intended to define with minuteness of detail what the street railway company was to do. The company was required to give a bond for the faithful performance of the contract, and the purpose of this bond was evidently to secure the city in the obligations which the company owed it. The franchise granted under the ordinance of December 15, 1864 expired in 25 years or on February 2, 1890, two years before the contract of October 7, 1892 was made; so it is evident that the bonus provided for under that franchise could not have been referred to. In the second section of the contract of October 7, 1892, the city of Covington expressly reserves the right "to exact a bonus or consideration from this company as well as all others for the use of such streets as are now abandoned by this ordinance." It is evident here that the word "bonus" is used as equivalent to "consideration;" and taking the contract as a whole we are satisfied that the payments required by section 9, and which it is there provided shall be in lieu of any and all car license or bonus, were intended to be

the full consideration the company was to pay, and in lieu of all former payments.

On the cross-appeal the railroad company complains of the judgment against it in favor of the city for $2,500 with interest. The judgment came in this way: the company paid the ten payments of $1,300 each. It also paid ten payments of $2,000 each but on December 15, 1902, it skipped a payment, conceiving the idea that under the contract it was not required to make this payment until June 15, 1903. It paid this money on June 15, 1903, and made after this nine payments of $2,500 each. It has since made semi-annual payments of $3,000 each. The contract being made on October 7, the payments were due by the terms of the contract as follows:

"These sums shall be paid one-half on the 15th day of June and one-half on the 15th day of December in each year."

The first payment was due on the 15th. day of December in the year 1892. The company made this payment then and continued to pay on this construction of the contract for ten years. It then conceived the idea that it had been paying six months in advance. We do not so construe the contract. The old contract required this money to be paid on December 15, 1892. It was not the intention of the parties to release the company from this payment. The new contract did not change the existing liability. Both the parties at the time and for years thereafter so construed the contract. The first payment was due on December 15, 1892. The $2,500 that was due on December 15, 1902, has not been paid, and judgment was properly rendered against the company for this sum with interest from the time it was payable. The case would not be different if the company had executed ten notes each for $2,500 and had failed to pay the note falling due December 15, 1902. On December 15, 1907, the company should have paid $3,000 and not $2,500. It also owes the city this $500 with interest. But this sum not having been sued for, as the court well held, could not be included in the recovery. The judgment in this case, however, will not bar an action by the city to recover the money, as it was not sued for here. There is no force in the insistence of the company that it should not pay interest on the money which it owed and did not pay. The money was due under a written contract and not being paid, it by virtue of the statute bears interest.

The judgment is affirmed on the original and on the cross appeal.

Whole court sitting.