STATE OF INDIANA *v.* WRIGHT ET AL.

[No. 14,128. Filed April 15, 1931. Rehearing denied August 13, 1931. Transfer denied December 12, 1933.]

*James M. Ogden,* Attorney-General, and *Connor D. Ross,* Assistant Attorney-General, for the State.

*Merle N. A. Walker,* for appellees.

WOOD, J.—This is a second appeal to this court, from a judgment rendered by the Marion Superior Court, sitting as a court of claims, in an action brought by the appellees against the appellant for a balance alleged to be due them on a contract, entered into between appellees, and the State Highway Commission of the state of Indiana, for the construction of the grade, for a state highway between the towns of Lyford and Veedersburg. See *State* v. *Wright* (1928), 89 Ind. App. 244, 161 N. E. 839.

In this appeal, appellant has assigned as error, (1) the overruling of its motion to make appellees' amended complaint more specific; (2) the overruling of appellant's demurrer to the amended complaint; (3) error in stating conclusions of law on the special finding of facts; and (4) error in overruling appellant's motion for a new trial.

Upon the former appeal of this case, referred to supra; this court set out the facts and the issues with great care and precision. In as much as the facts, pleadings, and issues were not changed upon the trial of the case, from which this appeal is taken, but are identically the same as upon the former trial, it is not deemed necessary to again set them out in this opinion.

Even though appellants make vigorous assault upon the sufficiency of the amended complaint, upon which this cause was tried, in support of their first two assignments of error, they must fail. When this cause was before this court on the former

appeal, the first two errors above indicated were assigned for reversal, and it was then held, that the trial court did not commit error in overruling appellant's motion to make the amended complaint more specific, nor in overruling appellant's demurrer to the amended complaint. The court, in passing upon the sufficiency of the amended complaint, used this language. "The amended complaint, although it contains many unnecessary and improper averments, is based upon the contract by which appellees agreed to excavate for, and grade the roadway for a specified sum, it being understood that the amount of material to be excavated and the amount of concrete to be laid, etc., were to be as estimated in the plans. The contract, among other things, provided that if more excavation should be required than estimated, or if the concrete used in the construction should exceed the estimates, the pay of the contractors should be increased, the increase to be governed by the unit price bid for the class of which there had been an increase over the estimate and by the terms of the contract as found in the specifications."

It was further stated that the amended complaint, while sufficient as a complaint on a contract was not sufficient to warrant recovery for the "force account" items alleged. Thus this court in its former opinion, not only decided that the appellees' amended complaint was good as against demurrer but in doing so was required to and did determine the theory thereof. That opinion is binding in this appeal. *Lille* v. *Trentman* (1891), 130 Ind. 16, 29 N. E. 405; *Board* v. *Bonebrake* (1896), 146 Ind. 311, 45 N. E. 470; *Barrett* v. *State of Indiana* (1911), 175 Ind. 112, 93 N. E. 543; *Gardner* v. *Evansville Improvement Co.* (1924), 195 Ind. 471, 145 N. E. 923; *Ewbanks Manuel of Practice* (2d. Ed.) §250.

On the first trial of this case, the appellant requested

the court to find the facts specially and state its conclusions of law thereon. This the trial court refused to do, error was assigned on this action of the trial court in the former appeal. It was held that §394 of the Code of Civil Procedure (§603, Burns 1926, §360, Baldwin's 1934) applied and the trial court erred. It was for this error that the case was reversed, and a new trial had, from which this appeal is taken. Accordingly, in the last trial, the court made a special finding of facts, and stated its conclusions of law thereon.

Chapter 53, Acts of 1919, p. 119, §§8268-8305, Burns 1926, created the state highway commission. This commission consists of three divisions, viz: construction, maintenance, and auditing. The chief of the division of construction is known as the chief engineer, and under the direction of the director of the commission, has supervision and management of the work under his division and is responsible therefor. He is required to be a competent and skillful civil engineer, experienced and skilled in highway construction and improvement; he has supervision of all highway and bridge construction. It is his duty to prepare plans and specifications for all state highways. The director may authorize partial payment to any contractor performing work, as the same progresses. "On new construction work, there shall not be paid to exceed ninety per cent of the chief engineer's estimated cost of the completed work." When work has been fully completed, it may be approved, accepted, and paid for in sections, of not less than a mile, if the contractor files a bond, that such section shall be in good condition upon final completion of the whole work.

An examination of the act leads to the inevitable conclusion that it was the intention of the legislature to establish a commission, vested with broad and compre-

hensive powers, having for its purpose the establishment, construction, and maintenance, as expeditiously as conditions would permit, of a public highway system for the state. While the act expresses the general method of procedure to be followed in the accomplishment of some of its purposes, and sets out specifically the form of bond to be required of contractors for work, it is a significant fact, that while contracts for work must be in writing, there is no form of contract, nor are there any prescribed conditions to be inserted in contracts, contained in the act. We conclude, therefore, that the form and conditions of the contracts for work, were matters to be determined upon by the state highway commission, subject to the statute and the approval of the attorney-general, as to legality and form. §8287, Burns 1926; Donnelly, Law of Public Contracts, §17. The State Highway Commission has the power to formulate and enter into any contract within the purpose of its creation, which is not prohibited by statute, or against public policy. *Schipper* v. *City of Aurora* (1889), 121 Ind. 154, 22 N. E. 878.

"In entering into the contract (the state) laid aside its attributes as a sovereign, and bound itself substantially as one of its citizens does when he enters into a contract. Its contracts are interpreted as the contracts of individuals are, and the law which measures individual rights and responsibilities, measures with few exceptions, those of a state whenever it enters into an ordinary business contract." *Carr* v. *State* (1890), 127 Ind. 204, 26 N. E. 204; *City of Indianapolis* v. *Indianapolis, etc., Co.* (1916), 185 Ind. 277, 113 N. E. 369; *Cleveland, etc., Co.* v. *State of Ohio* (1912), 85 Ohio State 251, 97 N. E. 967, 39 L. R. A. (NS) 1219:

The validity of the contract as originally entered into

is not questioned in any way. It was accompanied with plans, specifications, and profiles prepared by the chief engineer, and it was upon these as so prepared that the appellees submitted their bid. The original contract price for the work was $62,423.35, made up of the following items, to wit:

| Quantities | Unit Price | Amount |
|---|---|---|
| 92,727 Cu. yd. Excavation Earth....$ | .45 | $41.727.15 |
| 2,794 Cu. yd. Special Borrow.......... | .20 | 558.80 |
| 177.7 Cu. yd. Class "A" Concrete in Headwalls ............................... | 20.00 | 3,554.00 |
| 229.2 Cu. yd. Class "A" Concrete in Culverts ................................. | 20.00 | 4,584.00 |
| 259.4 Cu. yd. Class "B" Concrete in Culverts ................................. | 18.00 | 4,669.20 |
| 24,517 Pounds Deformed Steel Bars Reinforcing Concrete Structure ........................:.............. | .05 | 1,225.85 |
| 640 Lin. ft. New 15-inch Reinf. Conc. Pipe .........,..................... | 2.321 | 1,485.44 |
| 865 Lin. ft. New 18-inch Reinf. Conc. Pipe .................................... | 2.651 | 2,293.11 |
| 224 Lin. ft. New 24-inch Reinf. Conc. Pipe .................................... | 3.96 | 887.04 |
| 228 Lin. ft. New 30-inch Reinf. Conc. Pipe .................................... | 5.17 | 1,178.76 |
| 25 Sq. yd. Riprap ........................... | 10.00 | 250.00 |
| 1 Each Monuments .......................... | 10.00 | 10.00 |

Total for Grading and Structure only....$62,423.35

During the course of construction of the work, changes were ordered made by the chief engineer in the height and location of the grade, necessitating the excavation and removel of more material than the amount comprehended in appellees' bid. The total number of cubic yards of material excavated or moved is not

causing serious controversy between the parties in this action. In the final estimate made by the State Highway Commission, October 10, 1925, the total amount of excavation of all classes was stated to be 156,626 cubic yards, all of which was classified by the commission as earth excavation. Appellees assert that of said material so excavated, 21,823 cubic yards was rock excavation as defined by the contract; that it should be classified, and paid for as such. This is the most serious point of difference between the parties.

While the work was being carried on under the contract, the State Highway Commission, from April 25, 1924, to April 10, 1925, issued to appellees nine statements upon the amount and character of the work which had been accomplished by appellees under the contract, and the amount due for the same. All of these estimates were approved by the director, and chief engineer of the commission. There were six estimates made from November 10, 1924, to and including April 10, 1925, all of which included an item for rock excavation, the last of said estimates having 12,769 cubic yards of excavation classified as rock, for which appellees were to be paid at the rate of $1.35 per cubic yard, or three times the amount to be paid for earth excavation, as provided under the contract, amounting to the sum of $17,238.15. In this estimate there was included an item of 107,055 cubic yards of earth excavation at forty-five cents per yard according to the terms of the contract, amounting to the sum of $48,174.75. Also, an item of 2,794 cubic yards of earth excavation designated as special borrow, at twenty cents per yard, pursuant to the contract, amounting to $558.80. The contract defined what should be regarded as rock excavation, and stipulated that if rock excavation was encountered, it should be paid for at three times the price paid for earth excavation, which, under the terms of this contract, would be $1.35

per cubic yard. It appears from the evidence, that for a period of six months, while the appellees were carrying out the work contemplated by the contract, and the additional work, made necessary because of changes, ordered by the State Highway Commission through its chief engineer, in the plans and specifications, and before any difference of opinion had developed between the parties, an interpretation was placed upon the contract, and a classification of the character of the materials excavated was made and acted upon. In other words, the parties themselves placed a construction upon their contract.

In the final estimate made by the State Highway Commission to October 10, 1925, heretofore referred to, covering the period of operation from April 10, 1925, a radical change was made in the amount and classification of the material excavated, in this, viz: the items of earth excavated was placed at 126,661 cubic yards, at forty-five cents per yard, and the item of special borrow was placed at 29,975 cubic yards, at twenty cents per yard, or an increase in this one item of 27,181 cubic yards. While the item of 12,769 cubic yards of rock excavation at $1.35 per yard, contained in the preceding estimate of April 10, was eliminated entirely. The reason for a change in classification of material is not disclosed by the record. The appellees refused to accept this classification. The classification of the material excavated, whether as earth or rock, was a question of fact for the court to determine from the evidence.

The terms of the contract so far as they related to the work to be performed by appellee, were not ambiguous or uncertain, but if they were, the practical construction and interpretation placed upon them by the parties themselves, is entitled to great, if not controlling influence. The State Highway Commission

should not be permitted, without some well founded reason, after the parties had accepted and acted upon a classification of material excavated, to arbitrarily change the same, even though the statute permits changes in estimates to be made. *Board* v. *Gibson* (1901), 158 Ind. 471, 63 N. E. 982; *Patterson* v. *State Bank of Chrisman* (1913), 55 Ind. App. 331, 102 N. E. 880; *Covington* v. *Southern, etc., Co.* (1912), 147 Ky. 326, 144 S. W. 17; *Chicago* v. *Sheldon* (1869), 9 Wall. 50, 19 L. Ed. 594; *Scully* v. *United States* (1912), 197 Fed. 327; Donelly, Law of Public Contracts, §170.

The contract, plans, and specifications authorized the engineer to make alterations in the plans, or in the character or quantity of the work. The contractor agreed to make the changes at the unit price bid for the items involved. The engineer also had authority to order extra work whenever, in his opinion, necessary to properly complete the improvement, such work to be paid for as previously agreed upon by the contractor and director. The contract provided that before final payment was made, the contractor should furnish receipts for all debts incurred in prosecution of the work, or satisfactory assurance that same had been or would be paid.

It is the contention of appellant, that the burden was upon appellees to show, that previous to performing the extra work, which the evidence shows was ordered, or approved by the chief engineer, they entered into a written contract with the director of the commission, relative to payment for the same. That they must also prove that they had paid all claims or that they would be paid. That having failed to establish these two facts they are not entitled to recover. Appellants seek to interpose these conditions in the contract for the purpose of preventing the appellees from recovering on their claim. The evidence shows without

any conflict, and the court so found, that appellant had accepted the highway grade as constructed by appellees, placed a concrete pavement upon the same, and is now occupying, enjoying and using it. Such conduct upon the part of appellant, estops it from now escaping liability, because of the failure of appellee to comply with those conditions of the contract. To permit the state to accept the work and labor of appellees, and receive the full benefit thereof, without being required to pay the contract price would be inequitable, and unjust, and out of harmony with the rule heretofore announced by the courts of our state. *Board* v. *Byrne* (1879), 67 Ind. 21; *Bass, etc., Co.* v. *Board* (1888), 115 Ind. 234, 17 N. E. 593; *Board* v. *Motherwell Iron and Steel Co.* (1889), 123 Ind. 364, 24 N. E. 115; *Board* v. *Newlin* (1892), 132 Ind. 27, 31 N. E. 465; *Board* v. *O'Connor* (1893), 137 Ind. 622, 35 N. E. 1006; *Alsmeier* v. *Adams* (1914), 62 Ind. App. 219, 105 N. E. 1033; *Board* v. *Gibson, supra.*

The court of claims found that the appellees under the contract, furnished work, labor, and material, excavated earth, rock, and did construction work for which they were entitled to be paid in items and amounts as follows:

| | | |
|---|---:|---:|
| 418.44 Cu. yds. Class "A" Concrete, at | $20.00 | $ 8,368.80 |
| 197.44 Cu. yds. Class "B" Concrete at | 18.00 | 3,553.92 |
| 24,492 Lbs. Steel Reinforced Bars, at | .05 | 1,224.60 |
| Reinforced Concrete Pipe | ........ | 5,911.10 |
| 2,794 Cu. yds. Special Borrow, at | .20 | 558.80 |
| 21,823 Cu. yds. Solid Rock Excavation, at | 1.35 | 29,461.05 |
| 112,953 Cu. yds. Earth Excavation, at | .45 | 50,829.08 |

Total amount due appellees.......................$99,907.35

Less amount paid in contract.................... 77,336.25

Leaving balance due Jan. 1, 1925............$22,571.10
Interest on balance at six per cent from
    December 7, 1926................................. 4,175.66

Making total amount for which judgment
    was rendered .......................................$26,746.76

The finding of facts as made by the court including the above items, except the item of interest are fully sustained by the evidence. In fact, as heretofore suggested, the only contention between the parties relates to the amount of material excavated, the classification of same, and the item of interest. The total number of cubic yards of material excavated, as found by the court is 19,056 yards less than the amount contained in the final estimate made by the State Highway Commission. This difference inured to the benefit of the appellant, so it is in no position to make complaint.

In their brief counsel for appellant discuss the question of the right of appellees to recover under the "force account" provisions contained in the contract. The special finding of fact indicates, that the case was tried upon the theory of the complaint as determined by this court in the former appeal, so we do not deem it necessary to consider that subject further.

Complaint is made of rulings of the trial court in permitting witnesses to testify, and in admitting in evidence certain exhibits offered by the appellees. We have given all these alleged grounds careful consideration, and are convinced that the court did not commit any error in the admission of evidence that would justify a reversal of this cause. *Board* v. *Newlin, supra; Board* v. *O'Connor, supra.*

It was error for the court to allow interest in the sum of $4,175.66. It is not the policy of the state to pay interest in the absence of a law, or a contract stipulating for its payment. These are both lacking in this case. *Carr* v. *State, supra; Scully* v. *United States, supra;* §1555, Burns 1926. If the appellees are so disposed this error can be cured by the filing of a remittitur for the amount of the interest.

It is therefore ordered that this judgment be and the same is hereby affirmed on condition that the appellee file a remittitur with the clerk of this court, for the sum of $4,175.66, within sixty days from the date of the rendition of this opinion, and that if not so filed, this cause be remanded to the trial court, with instructions to modify the amount of its judgment and enter judgment for the appellees in the sum of $22,571.10.