**METROPOLITAN SCHOOL DISTRICT OF MARTINSVILLE,**
Defendant-Appellant,

v.

**Claudette MASON, Plaintiff-Appellee.**

No. 1–982A280.

Court of Appeals of Indiana,
First District.

July 12, 1983.

Rehearing Denied Aug. 12, 1983.

---

1. The constructive trust has 95% of the amount invested.

James Bruce Dodd, Martinsville, for defendant-appellant.

Phillip R. Smith, Wehrle & Smith, Mark Peden, Foley, Foley & Peden, Martinsville, for plaintiff-appellee.

NEAL, Judge.

### STATEMENT OF THE CASE

Defendant-appellant Metropolitan School District of Martinsville (School or School Board) appeals from a judgment entered in the Morgan Superior Court upon a jury verdict, awarding plaintiff-appellee Claudette Mason (Mason) money damages in the amount of $30,075.

We reverse in part and remand in part for a limited new trial.

### STATEMENT OF THE FACTS

Mason was an individual contract bus driver for the School, and her last contract with the School Board expired at the end of

the 1979–1980 school year. During the Fall of 1979, the School Board advertised that it would receive bids on school bus transportation contracts for a four year period from 1980 to 1984. All bids were received on December 6, 1979, and Mason entered the only bid on route 21 for $97.50 per day. Mr. Forrest Wildman and Mr. Richard Cunningham, the Business Manager and Director of Transportation for the School, respectively, recommended to the School Board that bids on five of the routes should be rejected, including Mason's bid on route 21. Wildman testified that although Mason was the only person to bid on route 21, her bid was considered excessive when compared to similar routes. As a result, both Wildman and Cunningham recommended that route 21 and four other routes be rebid. The School Board accepted their recommendation and rebid those five routes.

In making their decision to rebid Mason's route, the School Board considered both economic and personal factors. The Board was aware of certain personal problems involving Mason's inability to control student behavior on her bus. The second round of bidding was on January 3, 1980, and a fleet bidder outbid all individual bidders and was awarded a transportation contract for five routes, including Mason's former route 21.

During and following the bidding process Superintendent Tracy Dust met with Mason to discuss why her bid was rejected. At trial, Superintendent Dust testified that Mason's bid was rejected for both economic and personal reasons, stemming from the discipline problems with students riding on her bus.

Mason filed a three count complaint which we have abbreviated as follows: Count I—reimbursement on her school bus contract for extra mileage incurred due to road construction on her route; Count II—the value of the four year transportation contract which the School Board refused to award her, and Count III—the lost profits under her existing contract for failure of the School Board to use Mason for extracurricular trips when the School Board had accepted her bid for such trips.

Following a three day trial, the jury returned a general verdict in favor of Mason, assessing her damages in the sum of $30,075.00.

## ISSUES

Restated, the School Board presents the following issue:

Whether there was sufficient evidence to show that the School Board's action was arbitrary and capricious.

## DISCUSSION AND DECISION

The verdict and judgment was a single, indivisible judgment, and not apportioned among the three counts, each of which contained a separate claim. The evidence of damages to support Counts I and III is negligible, comparatively, and it must be concluded that the bulk of the jury award was contained in Count II. The School Board contests only Count II.

The claim in Count II is premised upon the loss of profits on the contract over the life of the contract period. However, no contract was entered into. In *Inman's Incorporated v. City of Greenfield*, (1980) Ind. App., 412 N.E.2d 126, we stated that a parallel existed between the public lawsuit statute and the bidding statutes in that the purpose of the statute was not to provide disgruntled bidders with a new cause of action, citing *State ex rel. Sekerez v. Lake Superior Court*, (1975) 263 Ind. 601, 335 N.E.2d 199, and *Gariup v. Stern*, (1970) 254 Ind. 563, 261 N.E.2d 578. However, any defense the School Board may have had under *Inman* was waived by not litigating that issue in trial court and not preserving it in its motion to correct errors. The School Board belatedly attempts to raise the issue for the first time on appeal by labeling it subject matter jurisdiction. It cites no satisfactory or relevant authority, nor does it make any cogent argument to demonstrate why the Morgan Superior Court has no subject matter jurisdiction over causes of actions for breach of contract or suits under the bidding statute. How-

ever, since we are reversing on the merits, we need not address that issue.

█ Under the pupil transportation statute, Ind.Code 20–9.1–2–9 provides that transportation or fleet contracts shall be awarded to the lowest responsible bidder; however, the section states:

"The governing body may refuse to award the bid to the lowest responsible bidder, if the amount bid is not satisfactory to the school corporation."

Ind.Code 20–9.1–2–11 states:

"A governing body is authorized to reject any or all bids. If no bid is received for a specified route, the governing body may either readvertise for bids or negotiate a contract for the route without further advertising."

It is to be noted that the power to reject all bids is not qualified in any way. The portion quoted above, denominated as Ind.Code 20–9.1–2–9 and 11, first appeared in the Indiana statutes on school bus contracts in 1973. The previous law, Burns 28–3930, enacted in 1945 as ch. 210, § 1, contained only the provision that

"[w]henever sealed bids are received the trustee, with the advice of his advisory board, shall award each contract so made to the lowest and best responsible bidder."

Generally a statutory amendment which changes the language of a prior statute indicates a legislative intention that the meaning of the statute has been changed, and raises a presumption that the Legislature intended to change the law. *Indiana Alcoholic Beverage Commission v. Osco Drug, Inc.,* (1982) Ind.App., 431 N.E.2d 823.

One of the reasons the School Board rejected Mason's lone bid for a bus route was that the amount of the bid was not satisfactory to it.

64 Am.Jur.2d *Public Works and Contracts* §§ 75 and 76 contains a summary of cases in other jurisdictions. We have found no comparable Indiana case. In 64 Am.Jur.2d, *supra,* is the following discussion on the right of public authorities to reject any and all bids:

"3. Rejection of Bids

§ 75. Generally; effect of reservation of right to reject.

Frequently, the provisions of a constitution, city or county charter, or a statute or ordinance gives public authorities the right to reject 'any and all' bids or 'any or all' bids, and the authority thus granted is usually given effect by the courts, although in some cases under a particular statute involved, the right of public authorities to reject all bids has been recognized as one of limited discretion. Moreover, in the absence of such a provision, the courts have recognized the right of public authorities to reject all bids, particularly where the invitation to bid contained an express reservation of the right, notwithstanding that the provisions of a statute or a city charter required the letting of the contract to the lowest bidder or lowest responsible bidder. However, in some cases in the absence of a constitutional or legislative provision reserving the right to reject all bids, the right is recognized as one of limited discretion, even though the proposal or invitation to bid contained an express reservation of the right.

\*    \*    \*    \*    \*    \*

§ 76. Extention of discretion to reject.

Generally, the discretion conferred upon public officials to reject all bids is a very broad one to be exercised for the benefit of the public, particularly where the proceeding is irregular or questionable, but in any case only for a proper purpose. It has been held, however, that where the right to reject is reserved, the lowest bid or any bid may be rejected on a mere technicality, that all bids may be rejected, even if arbitrarily and unwisely, or under a mistake, and that in the exercise of a sound discretion, the award may be made to another than the lowest bidder. In such cases there is no binding obligation to award the contract to any bidder, and although all bids are rejected and the enterprise abandoned, in good faith, or all bids are rejected and new bids asked for, the courts will seldom, if

ever, interfere. With reference to state highway construction, it has been held that the statutory power of the superintendent of public works to reject any or all bids cannot be questioned unless his action is arbitrary, capricious, or unreasonable.

While the motive for rejection of all bids under a right to do so has been regarded as immaterial, in some cases it has been held or recognized that the right of public authorities to reject all bids for public works or contracts must be exercised in good faith, and promptly. Where public officials have the right to reject any and all bids for a public contract, the view is generally taken that they may consider the differences or variations in the character or quality of the materials, articles, or work proposed to be furnished by the various bidders, in determining whether to accept any of the bids, or which bid to accept." (Footnotes omitted.)

We are of the opinion that the power of the School Board to reject *all bids,* here the lone bid, is extremely broad. In addition to the statute, numerous cases in Indiana exist which address the limited nature of judicial review of administrative decisions.

A trial court's initial review of an administrative decision is limited to a determination of whether the board's action was: arbitrary, capricious, an abuse of discretion, not in accordance with the law, or unsupported by substantial evidence. In determining whether an administrative decision is supported by substantial evidence, the trial court must examine the whole record to determine whether the board's decision lacks a reasonably sound basis of evidentiary support. *Natural Resources Commission, etc. v. Sullivan,* (1981) 428 N.E.2d 92. A reviewing trial court may not, without a finding supported by evidence of an arbitrary and capricious ruling by an administrative board, preempt that board's func-

tion. *City of Marion v. Alvarez,* (1972) 151 Ind.App. 133, 277 N.E.2d 916.

The Court of Appeals, in reviewing the decision of an administrative body, is not to substitute its own opinions and conclusions for those of the board but, rather, it must give deference to the expertise of the board. *Aaron v. Review Board, etc.,* (1981) Ind.App., 416 N.E.2d 125; and *Capital Improvement Board, etc. v. Public Service Commission,* (1978) Ind.App., 176 Ind. App. 240, 375 N.E.2d 616. Like the trial court, our duty is to review the administrative proceedings to see that the board's decision is supported by substantial evidence, that it is not arbitrary and capricious, and that the board has complied with all relevant rules of law and procedure, including its own rules. *Id.* The sole relief either the trial court or the Court of Appeals may grant when an administrative decision is found to be unlawful is to vacate the decision and remand to the board for further determination. *Aaron, supra.* Furthermore, this court may not reweigh the evidence in reviewing a decision of an administrative body. *Clarkson v. Department of Insurance, etc.,* (1981) Ind.App., 425 N.E.2d 203.

The record discloses that the decision of the School Board was based on the two factors Mason describes. Mason's bid on route 21 was $97.50 per day. When compared to similar routes, it was determined excessive, and therefore not approved by the School Board. Testimony also reveals that School Board members were aware of Mason's problems in controlling the students who travelled on her bus. Superintendent Dust described several incidents involving discipline problems on Mason's bus, resulting in his having to warn Mason. After Mason's bid was rejected there was a second round of bidding in which a fleet bidder[1] was accepted for five routes, including Mason's former route 21. According to Mr. Cunningham, the School's transportation director, there was a significant

---

1. Ind.Code 20–9.1–2–4.1 provides for the governing body of a school corporation to enter into written contracts with fleet bidders.

savings achieved in awarding the five rebid routes to a fleet bidder.

 The burden of proving that the administrative action of the School Board was arbitrary and capricious or an abuse of discretion falls upon the party attempting to upset the administrative order. *Clarkson, supra.* Where a board is vested with discretionary power to enter into public contracts pursuant to competitive bidding, with power to determine the lowest and best bid, an honest exercise of such discretion will not be disturbed by the courts. *Budd v. Board of County Commissioners, etc.,* (1939) 216 Ind. 35, 22 N.E.2d 973. An arbitrary and capricious administrative act is one which is willful and unreasonable, without consideration and in disregard of facts or circumstances in the case; the act is one without some basis which would lead a reasonable and honest person to the same conclusion. *State Board of Tax Commissioners v. South Shore Marina,* (1981) Ind. App., 422 N.E.2d 723.

Although the construction of the statutes suggests such a result, and the cases in 64 Am.Jur.2d, *supra,* indicate that some jurisdictions reach such a result, we are not required in this case to determine whether the power of the School Board to reject all bids is an unlimited one, or whether motive is even relevant. We find that there is no basis in the evidence from which it can be concluded that the action of the School Board, in exercising a positive right and power conferred by statute, was arbitrary, capricious, unreasonable or fraudulent in rejecting Mason's sole bid because it was comparatively too high, and resubmitting bids on her route and other routes. We are aware that better prices were received upon rebidding. The court and jury simply reweighed the evidence before the Board, applied their own inferences, and substituted their judgment for that of the School Board. Although two reasons were advanced by some school personnel, one reason, the excessiveness of Mason's bid, is

sufficient, and we need not address the matter of discipline.

Therefore, we hold that there was insufficient evidence to support Count II. This cause is reversed as to Count II and the trial court is ordered to enter judgment for the School Board on that count. The court is directed to conduct a new trial for damages only on Counts I and III to determine what damages are due Mason on account thereof.[2]

Judgment reversed in part, and remanded in part.

ROBERTSON, P.J., and RATLIFF, J., concur.

---

2. Costs of this appeal shall be apportioned equally between the parties pursuant to Ind.

Rules of Procedure, Appellate Rule 15(H)(1).