**STATE BOARD OF PUBLIC WELFARE, and State Department of Public Welfare, Appellants (Defendants Below),**

v.

**Dr. Charles E. WATKINS, Dr. Fred D. Spinks, Dr. Roger L. Corbin, Dr. Peter S. Dyer, Indiana State Chiropractic Association, Inc., Appellees (Plaintiffs Below).**

**No. 1–983A302.**

Court of Appeals of Indiana,
First District.

Feb. 2, 1984.

Rehearing Denied March 6, 1984.

Transfer denied May 11, 1984.

---

Linley E. Pearson, Atty. Gen., Gordon E. White, Jr., Deputy Atty. Gen., Indianapolis, for appellants.

William A. Waddick, Kunz & Kunz, Terrence P. Pehler, Lemond, Carson, Yockey, Pehler & Caplin, Indianapolis, for appellees.

ROBERTSON, Judge.

This is an appeal by the State Board of Public Welfare and the State Department of Public Welfare (department) from the Boone Circuit Court's issuing of a preliminary injunction in favor of Dr. Charles E. Watkins, Dr. Fred D. Spinks, Dr. Roger L. Corbin, Dr. Peter S. Dyer, and the Indiana State Chiropractic Association, Inc. (collectively referred to as the doctors).

We affirm.

This case originally commenced in the Marion County Superior Court by the doctors requesting a restraining order relative to a rule adopted by the State Department of Public Welfare. The rule required prior review and approval of all medical services performed by chiropractors. Since the filing of this complaint, the department published in August of 1981, proposed rules, 470 Indiana Administrative Code 5–7–5 and 5–7–10.

One rule precludes medical reimbursement for diagnostic x-rays performed by chiropractors. Another rule limits medical reimbursement for independent laboratories only to services performed by a medical doctor or a doctor of osteopathy. A third rule, like the one already adopted, requires prior authorization by the department for all services performed by a chiropractor.

On December 22, 1981, the doctors sought to enjoin the adoption of these proposed rules. The parties entered an agreed order on December 23, 1981. The department agreed to continue to pay for chiropractic services authorized under Ind.Code 12–1–7–14.9 which includes diagnostic x-rays. They also agreed to assist chiropractors in the review for requests for chiropractic services under medicaid and to endeavor to agree on acceptable language for prior review and authorization of chiropractic services before making any amendments to the rule. The original complaint was subsequently venued to Boone County and lay dormant for almost two years. Then, on August 12, 1983, the doctors filed a supplemental complaint requesting relief by preliminary injunction.

On August 22, 1983, the trial court issued a temporary injunction which stopped the adoption of the proposed rules concerning medicaid services for which chiropractors would be paid and also effectively removed chiropractors from the purview of the medicaid prior approval program. In addition, the injunction mandated the department to pay for diagnostic x-rays performed by chiropractors.

The issuance of a preliminary injunction is a matter which lies within the sound discretion of the trial judge. The trial court's decision may be reversed on appeal only when the decision amounts to an abuse of discretion. *Chrapliwy v. Uniroyal, Inc.*, (N.D.Ind.1977) 458 F.Supp. 252. In determining whether the trial court abused its discretion in granting or denying a preliminary injunction, we do not weigh the conflicting evidence, and we consider only that evidence which supports the trial court's findings, conclusions and orders. *Wells v. Auberry*, (1982) Ind.App., 429 N.E.2d 679.

The first issue is whether the trial court had jurisdiction to grant the injunction since the rules had not yet been adopted. Generally, judicial review is denied for lack of finality if action by the administrative agency is only anticipated. The policy behind such decisions is that review would only delay the administrative process, thereby rendering administrative authority ineffectual. *Downing v. Board of Zoning Appeals*, (1971) 149 Ind.App. 687, 274 N.E.2d 542. However, this general rule is subject to certain qualifications such as where review of a final agency decision would not provide an adequate remedy or where the agency has acted in excess of its powers. *See: Wells v. Auberry*, (1982) Ind.App., 429 N.E.2d 679; 73A C.J.S. *Public Administrative Law and Procedure* § 205 p. 243. It is also the policy of the courts in all cases to avoid a multiplicity of suits. *Schmitt v. F.W. Cook Brewing Co.*, (1918) 187 Ind. 623, 120 N.E. 19; *Zumpfe v. Piccadilly Realty Co.*, (1938) 214 Ind. 282, 13 N.E.2d 715. Wheth-

er an agency action is reversible by the courts depends upon a realistic appraisal of the consequences of the action. *See:* 73A C.J.S. *Public Administrative Law and Procedure, supra* at 244.

■ In this case, the department had already adopted a rule the same as subsection (b) of proposed rule 470 IAC 5-6-5 requiring prior review and approval of all medical services performed by chiropractors. Consequently, there could be no issue of finality regarding the existing rule. Thus, there would be no purpose in precluding the court from enforcing the existing rule if the department could go ahead and adopt the proposed rule containing identical provisions. Also, after the doctors sought to enjoin the adoption of the proposed rules, the parties entered an agreed order on December 23, 1981. The department agreed to continue paying for services authorized under I.C. 12-1-7-14.9 which includes diagnostic x-rays. Furthermore, the department agreed to consult with chiropractors in the review of requests for chiropractic services under medicaid and to endeavor to agree on acceptable language before making amendments of the prior review and authorization rule. There was evidence indicating that the doctors would suffer financially by the loss of medicaid patients if the agreed entry was not followed. It was implicit in the injunction that the department be restrained from adopting the proposed rules in order to preserve the status quo and also avoid a multiplicity of suits.

■ The second issue is whether the trial court's injunction removing chiropractors from the medicaid prior approval program was contrary to law. The department has authority to adopt rules relating to prior review and authorization which is set out in Ind.Code 12-1-7-15.7 as follows:

(b) The Department shall, with the advice of its medical staff, promulgate rules pursuant to IC 4-22-2 (4-22-2-1-- 4-22-2-12) and consistent with Title XIX of the federal Social Security Act (42 USC § 1396 et seq.) and rules and regulations promulgated thereunder to:

(1) provide for prior review and approval of medical services.

The above statute authorizes the department to adopt rules for prior review and approval by classification of "medical services". It says nothing about approval by classification of the providers of those services. The department attempts to justify its actions by differentiating between services provided by medical doctors and osteopaths from those of chiropractors. Although chiropractors do provide different services than physicians, such distinction for purposes of medicaid payments is without validity as we interpret our public welfare statutes.[1]

The department's own rule 470 IAC 5-1-1 states:

The terms "medical assistance" and "Medicaid" are used synonymously and mean payment to or on behalf of part or all of the cost of medical or remedial services on behalf of eligible individuals as defined as I.C. 12-1-7-15 [sic] I.C. 12-1-7-14.9.

The term "medical services" is given further explanation by I.C. 12-1-7-14.9(a) which states:

"Medical assistance" means payment (—) to or on behalf (—) of part or all of the cost of medical or remedial services ...

The department may not by its own rules and regulations amend, alter, enlarge, or limit the terms of a legislative enactment. *See: Indiana State Board of Health v. B & H Packing Co.,* (1979) 181 Ind.App. 171, 391 N.E.2d 620. Had the legislature intended to authorize the department to pro-

---

**1.** *See Katz v. New Mexico Department of Human Services, Income Support Division,* (1981) 95 N.M. 530, 624 P.2d 39 for a contrary opinion in which the New Mexico Supreme Court decided that a chiropractor's services are not the same as a physician's services for purposes of reimbursement under the medicaid program. The court further stated that federal statutes and regulations do not require payment for services rendered by a chiropractor or a physical therapist and that denial of such benefits does not violate the Constitutional guarantee of equal protection.

vide for prior review and approval by classification of the providers of those services, it should have specifically so stated. As the statutes now exist, the department has no authority to adopt rules requiring prior review and approval of all chiropractic services and not those provided by medical doctors and osteopaths.

■ The third issue is whether the trial court erred in ordering the department to pay for diagnostic x-rays performed by chiropractors. The department contends that although chiropractic services consist of manual manipulation of the spine often requiring diagnostic x-rays of the vertebral column and extremities, it is not required to pay for the cost of the x-ray.

Under federal law, 42 U.S.C. § 1396d(g) provides for payment of chiropractic services under medicaid. The term medical and other services is defined by 42 U.S.C. § 1395x(s) to include physicians' services and 42 U.S.C. § 1395x(r) defines physician to include a chiropractor. In addition, the record shows a letter from the Department of Health and Human Services dated June, 1983, in which it specifically states that federal funds are available under 42 CFR 440.30(a) for chiropractic x-rays in any state which includes chiropractic services in its medicaid plan, and in which the provision of x-rays is within the scope of chiropractic practice.

Medical assistance under the Indiana medicaid program is defined in I.C. 12–1–7–14.9 to include "(9) prescribed laboratory and x-ray services" and "(15) any other medical care or remedial care recognized under state law". A "provider" under I.C. 12–1–7–14.9(d) includes any person licensed or otherwise qualified to perform services described in I.C. 12–1–7–14.9(b). Chiropractors are licensed under I.C. 25–10, and are specifically authorized under 25–10–1–1 to take x-rays of the vertebral column and extremities, to perform blood analysis, and urinalysis. Since Indiana includes chiro-

practic services in its medicaid program and since chiropractors are specifically authorized to take x-rays, logic dictates that chiropractors are authorized to receive payment for diagnostic x-rays performed on chiropractic medicaid patients.[2] Consequently, we find no error in the trial court's

Judgment affirmed.

NEAL, P.J., and RATLIFF, J., concur.

**2.** See *Keller v. Commonwealth of Pennsylvania Department of Public Welfare*, (1983) —— Pa. ——, 463 A.2d 1007, where the Pennsylvania Supreme Court upheld a statutory provision requiring that in order for chiropractic x-ray services to be covered by medicaid they must not only be "prescribed by a ... chiropractor" but also furnished by a facility which is qualified to participate under Title XIX of the Federal Social Security Act.