Robert V. **LAMBERT**, Norma Lambert, Robert V. Lambert, Jr., Frederick Lambert, John Lambert, David Lambert and Jean Seiden, d/b/a Hillview Enterprises, a Partnership, Appellants (Plaintiffs Below)

v.

**STATE** of Indiana, Acting By and Through its **DEPARTMENT OF HIGHWAYS**, Appellees (Defendants Below).

No. 1–684A144.

Court of Appeals of Indiana, First District.

Oct. 18, 1984.

Rehearing Denied Nov. 27, 1984.

Robert E. Rheinlander, Evansville, for appellants.

Linley E. Pearson, Atty. Gen. of Ind., Ann Scholl Long, Deputy Atty. Gen., Indianapolis, for appellees.

ROBERTSON, Judge.

Appellants, Robert V. Lambert, Norma Lambert, Robert V. Lambert, Jr., John Lambert, David Lambert and Jean Seiden, d/b/a Hillview Enterprises (Hillview) sought to have a preliminary injunction imposed against the appellee, State of Indiana (State), by and through its Department of Highways. The Vanderburgh Superior Court denied Hillview's request for a preliminary injunction and granted the State's motion to dismiss.

The relevant facts in this case are simple, and for the most part, undisputed. On November 14, 1983, the State issued notices requiring certain revisions to three of its demolition contracts for the Division Street highway project in Vanderburgh County; the contracts were between the State and Floyd Staub and had letting dates of November 22, 1983. The disputed portion of the contract revisions reads as follows:

> The Contractor will not be permitted to dispose of any surplus materials on the property owned by Robert W. Lambert, said property being located south of Southlane Drive, off of old U.S.R. 41 (Kentucky Avenue), south of the levee. (hereinafter Hillview Facility).

At the time the notices were issued, the State knew that construction of the I–164 project in Vanderburgh County would affect the Hillview Facility. A portion, if not all, of the Hillview Facility will have to be purchased by the State. The exact elevation of the highway ramps will determine the amount of excavation necessary, but the State will have to excavate down to the original ground. The percentage of cost shared by the state and federal government on the I–164 project is 90% federal and 10% state; and on the Division Street project 75% federal and 25% state.

The State contends that it did not want to have to pay twice, once for dumping demolition materials at the Hillview Facili-

ty and then later for removing those materials from the same facility. Under the terms of the demolition contract, the materials could go to any approved landfill location other than the Hillview Facility.

Staub said that he agreed to the revisions because the State notified him that he would not be eligible otherwise. He maintains that it is considerably more economical for him to dispose of the demolition materials at the Hillview Facility rather than the landfill located in northwestern Vanderburgh County known as Browning-Ferris Industries (BFI Facility). The Hillview Facility and the BFI Facility are the only landfill operations in Vanderburgh County that have been approved by the State of Indiana for the disposal of demolition materials. The demolition materials from the Division Street Project represent the major portion of all demolition materials available in the Vanderburgh County area for disposal at the Hillview Facility.

Appellant presents the following issues for review:

A. Whether the State's revision to its demolition contract violated the due process and equal protection provisions of the fourteenth amendment to the United States Constitution, and Article I of the Indiana Constitution.

B. Whether the State's revision of its demolition contract constituted an improper exercise of "police power" or public policy of the State of Indiana.

C. Whether the trial court erred in denying Hillview's request for a preliminary injunction.

D. Whether the trial court erred in granting the State's motion to dismiss.

E. Whether the trial court was bound by its findings and conclusions as contained in the order of December 29, 1983.

F. Whether the trial court erred in permitting Marston Fowler to testify concerning the federal government's participation in highway construction costs for the Division Street Project and the I–164 Project.

First, Hillview contends that the State's revisions to its demolition contracts consti-

tuted "state action" that created an arbitrary and capricious classification not reasonably related to the State's alleged objective and that the State violated Hillview's constitutionally protected right to contract and pursue an economic venture. Hillview further contends that the revisions were an abuse of discretion and that they violated its due process and equal protection rights under Article I of the Indiana Constitution and the 14th Amendment to the United States Constitution. The State, on the other hand, maintains that the contract revisions were merely a proper exercise of its proprietary powers and did not violate any constitutional provisions.

[1, 2] We agree with the State and conclude that Hillview's claims arise from a failure to distinguish between the two kinds of power possessed by government; namely, its sovereign power and its power to do business. Each of these types of power is limited by a distinct set of rules. In order to protect the rights of citizens, the power of the State to govern is restricted by constitutional limitations. However, when the State exercises its proprietary or business power, it is subject to no more limitation than a private individual or corporation would be in transacting the same business. *American Yearbook Company v. Askew*, 339 F.Supp. 719 (M.D.Fla.1972), *affirmed*, 409 U.S. 904, 93 S.Ct. 230, 34 L.Ed.2d 168 (1972); *State v. Feigel*, (1931) 204 Ind. 438, 178 N.E. 435; *Reith-Riley Construction Company v. Town of Indian Village*, (1966) 138 Ind.App. 341, 214 N.E.2d 208. While the line between governmental and proprietary function is subject to modification, one principle remains fixed: the letting of public contracts particularly those providing for the internal needs of government, is a proprietary function. *American Yearbook Company, supra.*

> Like private individuals and businesses, the government enjoys the unrestricted power to produce its own supplies, to determine those with who it will deal, and to fix the terms and conditions upon which it will make needed purchases.

*Perkins v. Lukens Steel Co.,* (1940) 310 U.S. 113, 127, 60 S.Ct. 869, 876, 84 L.Ed. 1108.

The case of *Coyne-Delaney Co. v. Capital Development Board,* 616 F.2d 341 (1980) presents a fact situation similar to the instant case. In *Coyne-Delaney,* the State of Illinois had an unfortunate experience with newly installed flush valves in a state prison. The prison authorities concluded that the plaintiff-manufacturer's valves, and not the prison plumbing system, were at fault. Accordingly, they requested that the state purchasing agent specify another manufacturer's valves for the next rehabilitation project at the prison and the purchasing agent did so specify. The plaintiff-manufacturer sought to enjoin the state agency from specifying the competitor's valves.

The Seventh Circuit reversed the district court's granting of a preliminary injunction in the case, stating:

> [G]overnment enjoys a broad freedom to deal with who it chooses; no one has a "right" to sell to the government that which the government does not wish to buy ... We believe state governments, like the federal government, possesses this power. A bidder on a government contract has no legally enforceable rights against the award of the contract to a competitor other than those the government has seen fit to confer. (citations omitted).
>
> [I]n the absence of an invidious and discriminatory design to favor one individual ... over another, (citation omitted) which has neither been alleged by plaintiff nor found by the district court in the case at bar, a state agency's purchasing decision is not subject to review in federal court.

Similarly, this court held in *State v. Wright,* (1931) 97 Ind.App. 660, 175 N.E. 666, 667:

> The state highway commission has the power to formulate and enter into any contract within the purpose of its creation which is not prohibited by statute or against public policy (citations omit-

ted). In entering into the contract it [the state] laid aside its attributes as a sovereign, and bound itself substantially as one of its citizens does when he enters into a contract.

Hillview has cited numerous Indiana cases in support of its argument. However, the cases cited deal primarily with statutory interpretation, which is not the issue here. The only statutes having an impact on the Hillview Facility are those under which Hillview was issued its operating permit. The State has not attempted to impair or revoke Hillview's operating permit, nor has state regulations or legislation been questioned.

■ The insertion of this provision into its demolition contract was not an arbitrary and capricious act; the State had a rational and lawful purpose in so doing. The percentage of cost shared by the state and federal government is 75% federal and 25% state on the Division Street Project and 90% federal and 10% state on the I-164 project. The federal government indicated that it would not participate in a double cost or the cost for removal twice of the demolition material from the Division Street project. The State did not want to have to pay twice. Thus, the decision to divert demolition materials from the Hillview Facility is justified in that the State does not want to take 100% state funds and move the material twice at the taxpayer's expense. The State used its best engineering judgment in deciding what the impact of the I-164 project would be as it affected the Hillview property.

■ Also, the State's contract provision does not deprive Hillview of the lawful use and development of its property. There is no evidence that Hillview owned or had any property interest in the material either purchased or condemned by the State which was the subject of the State's demolition contract. The State did not interfere with Hillview's permit to operate the landfill nor did it prevent any other person from doing business there.

Furthermore, Hillview's liberty to contract privilege is not impaired. If this were so, then whenever the State exercised a consumer's choice between competing suppliers, it would be denying a number of supplier's liberty to contract, either with the State or with bidders on state contracts. As the State points out, such a result would severely hamper the State's ability to do business.

■ In conclusion, the new contract provision does not constitute state action such that constitutional limitations should be brought into play. It is merely an exercise of the State's power to do business and pursue legitimate goals for the benefit of its citizens. Consequently, we find no error in the trial court's decision in this regard.

■ Hillview further claims that the State's contract provision is an unauthorized exercise of police power. In *Williams v. State*, (1983) Ind.App., 444 N.E.2d 888, 890, we defined "police power" in the following manner:

> We first recognize the impossibility of fully defining police power. *Bruck v. State, ex rel. Money*, (1950) 228 Ind. 189, 91 N.E.2d 349. However, the terms generally concerns the power inherent in government to enact law, within constitutional limits, to promote the order, safety, health, morals, and general welfare of society. *Id.* Police power accordingly operates in the field of legislation ...

Saving taxpayers money is a legitimate goal to be furthered by the exercise of the State's police power. Such would be clearly for the general welfare of society. An example of the State's power to enact law to promote such ideals can be seen in the statutes governing bids on the state highway contracts.[1]

Without a doubt, contracts that contravene public policy should not be enforced. However, many courts have cautioned against recklessness in condemning contracts as being in violation of public policy.

Public policy, some courts have said, is a term of vague and uncertain meaning, which it pertains to the lawmaking power to define, and courts are apt to encrouch upon the domain at that branch of government if they characterize a transaction as invalid because it is contrary to public policy, unless the transaction contravenes some positive statute or some well established rule of law ... [C]onsiderations such as these have led to the statement that the power of the courts to declare a contract void for being in contravention of sound public policy is a very delicate and undefined power, and, like the power to declare a statute unconstitutional should be exercised only in cases free from doubt.

*Prudential Insurance Co. of America v. Rice*, (1944) 222 Ind. 231, 52 N.E.2d 624, 626.

The State's new contract provision does not contravene a statute or rule of law. The public would, in fact, benefit from the provision by not forcing the State to pay twice for removal of the demolition material. This is certainly not a case "free from doubt" as set forth in *Prudential, supra.* Accordingly, we uphold the trial court's decision in this regard and do not find the contract provision to be against public policy.

■ Hillview next contends that the trial court erred in denying its request for a preliminary injunction, because Hillview had established a prima facie case. The grant or denial of a preliminary injunction rests in the sound discretion of the trial court and will not be disturbed except for an abuse of discretion. *Rees v. Panhandle Eastern Pipe Line Co.*, (1978) 176 Ind.App. 597, 377 N.E.2d 640. An applicant for preliminary relief need only show a prima facie case for an injunction and that injury to plaintiff would be certain and irreparable if the request is denied. *Id.* Further, when a party is appealing a negative judgment, as is Hillview, we are confined to one standard of review: only when the evidence is without conflict and leads to but one con-

---

**1.** *See,* IND.CODE §§ 8–13–10–1 *et seq.*

clusion and the finder of fact has reached a contrary conclusion will the decision be disturbed as being contrary to law. *Captain and Co., Inc. v. Towne*, (1980) Ind.App., 404 N.E.2d 1159. We consider only that evidence which supports the trial court's judgment, along with all reasonable inferences that may be drawn therefrom. *State ex rel. Department of Natural Resources v. Mason*, (1981) Ind.App., 416 N.E.2d 1312.

Injunctive relief has been referred to as the strong arm of the court and Indiana courts have long required that one who seeks injunctive relief should show that he is entitled to it. *Wells v. Auberry*, (1982) Ind.App., 429 N.E.2d 679.

■ Further, the requesting party must show irreparable harm and, in addition that such harm is recognized under the law. *Mullis v. Arco Petroleum Corporation*, 502 F.2d 290 (7th Cir.1974).

■ Here, Hillview has failed to show a probability of success on the merits, since as we have previously decided there were no constitutional violations. Also, none of Hillview's legally recognized property rights or right to contract have been enfringed upon. The evidence presented showed that the Hillview Facility will be affected by the construction of I–164. The recommendation that demolition materials from the Division Street Project be diverted from the Hillview Facility was based upon the State's best engineering judgment concerning the impact I–164 will have on the Hillview Facility. The federal government stated that it will not participate in the cost of removing the material.

Under these circumstances, where the State would have to move demolition material twice and in consideration of the applicable law, the trial court was well within its discretion in refusing to grant Hillview's request for a preliminary injunction.

■ Hillview also contends that the trial court erred in granting the State's motion to dismiss. A complaint is not subject to dismissal under Trial Rule 12(B)(6) unless it appears to a certainty from the face of the complaint that it would not be entitled to relief under any set of facts or circumstances.

■ Hillview's complaint in this cause makes allegations which are not recognized in the law. The constitutional violations alleged by Hillview, within the context of a State procurement contract, are not supported by relevant authority. The State has broad freedom in dealing with whoever it chooses. Thus, Hillview's complaint fails to state a claim upon which relief can be granted and the trial court did not err in granting the State's motion to dismiss.

Next, Hillview claims that the temporary restraining order entered on December 29, 1983, was, in fact, an appealable temporary injunction which became law when the State failed to appeal the order. The trial court would then have been bound to grant Hillview's request for a preliminary injunction.

■ It is the substance of an order that controls, and not what the parties call it. *Town of Wakarusa v. Bechtel*, (1948) 226 Ind. 101, 78 N.E.2d 161. The fact that the order was entered after notice and hearing in which the State participated, does not in and of itself make the order a preliminary injunction from which an appeal would lie. The very provision within the order itself providing for expiration of its terms on January 19, 1984, show that the order was, in fact, a temporary restraining order. The provision stated:

> Hearing on Hillview's application for a temporary or preliminary injunction is set before this Court on the 19th day of January, 1984, at 1:00 o'clock, p.m., by agreement of the parties at which time said TRO and its terms, conditions and findings shall expire.

The finding and conclusions of the order expired on the date that Hillview's application for a preliminary injunction was to be heard. The trial court did not intend to be bound by its terms past January 19, 1984. The order of December 19, 1983, was, by its own terms, a temporary restraining order.

Lastly, Hillview contends that the trial court erroneously permitted Marston Fowler to give irrelevant testimony concerning the federal government's participation in the highway construction costs for the Division Street Project and the I–164 project. We conclude that the admission of such testimony was harmless error, if error at all.

Trial was by the court sitting without a jury. A trial judge is presumed to know the intricacies of the rules of evidence and to consider the evidence in that light; ignoring the extraneous, incompetent, and irrelevant. *D.H. v. J.H.*, (1981) Ind.App., 418 N.E.2d 286.

For all of the foregoing reasons, we affirm the decision of the trial court.

NEAL, P.J., and RATLIFF, J. concur.