James M. RIDENOUR, as Director of the Indiana Department of Natural Resources, Defendant-Appellant,

and

Michigan City Charter Boat Association, Intervenor-Appellant,

v.

Clay FURNESS, Chris Furness, Jeff Furness, Mike Brazinski, Harold Bucy, Chris Camalick, Clem Cho, Bill Dickerson, John Hart, Lance Kaeding, Tom Mayoch, and Howard Westerman, Plaintiffs-Appellees,

Phil Smidt & Son, Inc., Plaintiff-Intervenor.

No. 06A01–8610–CV–267.

Court of Appeals of Indiana, First District.

Feb. 26, 1987.

Rehearing Denied March 25, 1987.

Timothy F. Kelly, Randall J. Nye, Beckman, Kelly & Smith, Hammond, W. Theodore Robinette, Bulen & Castor, Indianapolis, for plaintiffs-appellees.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

James M. Ridenour and the Michigan City Charter Boat Association interlocutorily appeal the trial court's imposition of a preliminary injunction. We reverse.

## FACTS

Several years of concern for the protection and enhancement of Lake Michigan's ecology culminated on August 22, 1986, with the promulgation by the Indiana Department of Natural Resources (DNR) of an emergency order temporarily banning the use of gill fishing nets for a forty-seven day period from September 15 through October 31, 1986. A gill net permits fish to swim into it and become entangled or have their gills compressed so as to prevent passage of oxygen-bearing water through the gills which causes suffocation. A gill net catches any variety of fish according to the size of the net's mesh. The only fish which get through a gill net are those small enough to swim through the mesh or big enough to fight their way out of the net. In the fall, young chinook salmon particularly are vulnerable to entrapment in gill nets which are used to catch perch.

The DNR's emergency order in 1986 was the result of many years of study. In 1978, Robert Koch, a DNR fisheries biologist, initiated a study on the effect of gill net fishing on the salmon in the Indiana waters of Lake Michigan. Koch's study, completed in 1982, concluded that immature chinook salmon dominated the catch of stocked salmon in gill nets. In 1983, the DNR completely prohibited commercial fishing of salmon. 310 Ind.Admin.Code 3–1–3(a).

Linley E. Pearson, Atty. Gen., Michael Schaefer, Deputy Atty. Gen., Robert D. MacGill, David O. Tittle, Bingham Summers Welsh & Spilman, Indianapolis, for appellants.

In 1985, Dan Brazo, another DNR fisheries biologist, initiated a monitoring study of commercial fishing to ascertain the effect of gill netting on the salmon population during the months of August through No-

vember, 1985. For this study, DNR representatives observed sixty-one (61) gill net lifts on thirty-seven (37) commercial fishing expeditions on Lake Michigan.[1] The DNR representatives actually observed 1,170 salmon killed in the gill net fishing. In addition, the DNR supplemented this monitoring in September of 1985, with their own research nets which yielded results closely approximating the commercial fishing monitoring. Mr. Brazo concluded in his 1986 report that 76,000 salmon would be destroyed in gill netting operations during the 47–day period of the DNR's proposed ban. Mr. Brazo's report also concluded that nearly all salmon caught in the gill nets perished; most salmon which survived and were released by the fishermen were consumed by sea gulls.

Mr. James, Chief of Fisheries of the DNR's Division of Fish and Wildlife, identified four (4) separate problems to be addressed by the DNR's proposed ban. First, gill netting created an "intolerable waste of a public resource", chinook salmon. Second, the continued loss of salmon substantially could reduce sport fishing in the Indiana waters of Lake Michigan. Third, gill net fishing threatened to totally nullify the extensive salmon stocking efforts of the DNR which came from public funds. Fourth, gill net depletion of salmon would harm economically those individuals, businesses and communities which rely upon sport fishing.

As stated above, the DNR issued an emergency order on August 22, 1986, banning the use of gill net fishing from September 15 through October 31, 1986. On August 22, 1986, twelve (12) commercial fishermen filed suit in the Marion County Circuit Court seeking to enjoin the Director of the DNR, James M. Ridenour, from enforcing the emergency order. On August 28, 1986, the Michigan City Charter Boat Association intervened in the action as a defendant. Also on that date, the plaintiffs moved for a temporary restraining order.

On September 3, 1986, Phil Smidt and Son, Inc., intervened as a plaintiff. On September 8, 1986, the circuit court held a hearing on the motion for a temporary restraining order.

The twelve fishermen alleged that the DNR's order was unconstitutional in that it was arbitrary and capricious, promulgated without due process, and deprived them of equal protection of the law. They also asserted that they had no adequate remedy at law. Two fishermen testified that the order would decrease their gross income by 11% to 12%. Two others testified of an anticipated loss of 19% to 21%. Two others testified of losses ranging from $14,000 to $20,000.

Phil Smidt and Son, Inc. is a restaurant in Hammond, Indiana. The restaurant has annual sales of three million dollars and a payroll of $600,000 for eighty-five (85) to ninety (90) employees. About 49% of Smidt's business is derived from lake perch, with 75% of their perch coming from Indiana suppliers. At trial, the owner of the restaurant, Mike Probst, testified that the emergency ban on gill net fishing would have such a "devastating" effect on the restaurant that it might have to be closed permanently.

After the hearing, the Marion County Circuit Court issued its Findings of Fact and Order on September 12, 1986. The court enjoined the DNR's enforcement of the gill net ban. The charter boat association moved for a change of venue. On September 24, 1986, the parties agreed to venue the cause to the Boone County Circuit Court.

On October 8, 1986, the Boone County Circuit Court ordered that the plaintiffs post a bond in the amount of $50,000 but denied Director Ridenour's motions to dissolve the preliminary injunction and, in the alternative, to grant a stay pending appeal. Thereafter, Director Ridenour brought this interlocutory appeal.[2]

---

1. The DNR observed 180,000 feet of net during the monitoring. Between 1.79 and 4.55 million feet of net were fished each month of the period.

2. On October 22, 1986, this court denied the Director's motion to reconsider the denial of the stay pending an interlocutory appeal.

## ISSUES

1. Did the plaintiffs make an adequate showing of irreparable harm and an inadequate remedy at law to support the trial court's preliminary injunction?

2. Did the plaintiffs show a reasonable likelihood of success on the merits to support the preliminary injunction?

3. Is this appeal moot or does it fall under the public interest exception?

## DISCUSSION AND DECISION

■ A trial court's grant or denial of a preliminary injunction lies within the sound discretion of the trial court. *College Life Insurance Co. of America v. Austin* (1984), Ind.App., 466 N.E.2d 738, 741 [hereinafter referred to as *College Life* ]; *Wells v. Auberry* (1982), Ind.App., 429 N.E.2d 679, 682. We will not interfere with the exercise of that discretion unless it is shown that the trial court's action was arbitrary or constituted a clear abuse of discretion. *College Life*, at 741; *Wells*, at 682. In reviewing the trial court's action, we will not weigh conflicting evidence, but will consider only that evidence supporting the trial court's findings, conclusions and order. *College Life*, at 744; *Wells*, at 682. Despite the discretionary nature of injunctive relief, preliminary injunctions " 'should be used sparingly and such relief should not be granted except in rare instances in which the law and facts are clearly in the moving parties' favor.' " *Wells*, at 682, *quoting, Indiana State Employees Association, Inc. v. Negley* (S.D.Ind.1973), 357 F.Supp. 38, 40.

When determining whether the trial court abused its discretion, we review the trial court's findings of fact. "Whether such findings of fact are adequate depends upon whether they are sufficient to disclose a valid basis under the issues for the legal result reached in the judgment and whether they are supported by evidence of probative value. Such findings may not be set aside unless they are clearly erroneous." *College Life*, at 742.

In *College Life*, Judge Robertson summarized the four elements to be examined for a preliminary injunction: (1) whether the plaintiff's legal remedies are inadequate thus causing irreparable harm pending the substantive action's resolution if the injunction does not issue; (2) whether the plaintiff has demonstrated a reasonable likelihood of success on the merits at trial by establishing a prima facie case; (3) whether the threatened injury to the plaintiff outweighs the threatened harm the issuance of the injunction may inflict on the defendant; and (4) whether the public interest would be disserved by granting the preliminary injunction. *College Life*, at 741–42; *see also Rees v. Panhandle Eastern Pipe Line Co.* (1978), 176 Ind.App. 597, 377 N.E.2d 640.

*Issue One*

■ When a plaintiff seeks a preliminary injunction, he must show an irreparable injury to a legally recognized right. In *Lambert v. State, Dept. of Highways* (1984), Ind.App., 468 N.E.2d 1384, 1390, *trans. denied*, this court held that the plaintiff's harm must be "recognized under the law." The plaintiff "must show clearly in his complaint a right, title, or interest in the subject matter of the action which warrants his seeking relief against defendant's acts." 16 I.L.E. *Injunctions* § 117 (1959). Property rights, constitutional rights, or contract rights are examples of the requisite rights. *Lambert*, at 1390; *see also Weinberger v. Romero-Barcelo* (1982), 456 U.S. 305, 312, 102 S.Ct. 1798, 1803, 72 L.Ed.2d 91, 98.

■ In the present case, neither the commercial fishermen nor the restaurant have a recognizable harm. In Indiana Code section 14–2–1–2, our legislature stated, "Any and all wild animals ... shall be the property of the people of the state of Indiana and the protection, reproduction, care, management, survival and regulation of the wild animal population shall be entrusted to the division of fish and wildlife of the Department of Natural Resources." [3] Our supreme court similarly held:

---

3. The power of a state to preserve fish and game within its borders is inherent in the sovereignty of the state. *New York ex rel. Kennedy v. Becker* (1916), 241 U.S. 556, 562, 36 S.Ct. 705, 707, 60

"Title to wild game and fish is in the state in its sovereign capacity as the trustee of all the citizens in common. No individual has a property right in fish or game while in its natural state. *Smith v. State* (1900), 155 Ind. 611, 58 N.E. 1044. The taking of fish or the killing of game is not a right but is a privilege granted by the state under such conditions as it may see fit to impose. *Smith v. State, supra.*"

*Hanley v. State, Dept. of Conservation* (1954), 234 Ind. 326, 123 N.E.2d 452, *on rehearing*, 234 Ind. 349, 355, 126 N.E.2d 879, 882 (1955). Thus, neither the fishermen nor the restaurant have any property interest in the fish harvested from the Indiana waters of Lake Michigan. Instead, commercial fishermen can fish in Lake Michigan only by virtue of annual licenses issued by the director of the DNR. Indiana Code section 14-2-7-11. Such a license is a privilege, not a right, which is revocable. *Organized Fishermen of Florida v. Watt* (S.D.Fla.1984), 590 F.Supp. 805, 815, *affirmed sub nom., Organized Fishermen of Florida v. Hodel* (11th Cir.1985), 775 F.2d 1544, *cert. denied*, — U.S. —, 106 S.Ct. 2890, 90 L.Ed.2d 978 (1986). Since the plaintiffs have no legally recognized right which has been harmed, they cannot claim an irreparable injury. This is fatal to their request for a preliminary injunction.

The findings supporting the preliminary injunction address the financial hardships which would be imposed on the fishermen and restaurant if the injunction did not issue. While there is much support for the proposition that merely financial injuries will not justify a preliminary injunction, *e.g., Steenhoven v. College Life Insurance Co. of America* (1984), Ind.App., 458 N.E.2d 661, 667-68, *on rehearing*, 460 N.E.2d 973; *Wells*, at 684, we need not go so far in our analysis since, as we have noted, the injuries to the plaintiffs are not based on any legal right. The trial court therefore abused its discretion.[4]

*Issue Two*

To succeed in requesting a preliminary injunction, the plaintiff must demonstrate a reasonable likelihood of success on the merits. *College Life*, at 741-42. However, "[a]n applicant for preliminary relief is not required to plead and prove a case which would entitle him to relief upon determination of the merits." *Rees*, 176 Ind.App. at 604, 377 N.E.2d at 646. Our supreme court defined the level of proof needed by stating as follows:

"In our determination of whether or not the trial court committed any error in granting the temporary injunction in this case, the [applicant] need only show a prima facie case for an injunction.... It is not necessary that a case should be made that would entitle the plaintiff to relief in all events. It is necessary only that the pleadings and evidence be such that it makes out a case for a proper investigation in equity and that the status quo be maintained pending such trial on the merits."

*Indiana Annual Conference Corp. v. Lemon* (1956), 235 Ind. 163, 167, 131 N.E.2d 780, 782; *see also Rees*, 176 Ind. App. at 604, 377 N.E.2d at 646. Thus, in the present case, the plaintiffs seeking a preliminary injunction had to establish a prima facie case that the DNR acted improperly when it enacted the emergency order banning gill net fishing.

The commercial fishermen and restaurant alleged in their complaint that the emergency order was arbitrary and capricious, promulgated without due process, and deprived them of equal protection. However, each appellee's brief presented arguments only that the order was arbitrary and capricious. Therefore, they have waived any argument that the DNR's order violated due process or equal protection.

---

L.Ed. 1166, 1171. This power has been recognized by the courts as arising out of the state's police power. *Geer v. Connecticut* (1896), 161 U.S. 519, 16 S.Ct. 600, 40 L.Ed. 793.

4. Because of our disposition of the issue concerning irreparable harm, we need not address the plaintiffs' theory that they have an inadequate remedy at law due to governmental immunity under Indiana Code section 34-4-16.5-3.

Ind.Rules of Procedure, Appellate Rule 8.3(A)(7).

■ Our court recently defined an arbitrary and capricious act by an administrative agency. In *Metropolitan School District v. Mason* (1983), Ind.App., 451 N.E.2d 349, 354, *trans. denied,* Judge Neal, writing for the court, said:

> "An arbitrary and capricious administrative act is one which is willful and unreasonable, without consideration and in disregard of facts or circumstances in the case; the act is one without some basis which would lead a reasonable and honest person to the same conclusion. *State Board of Tax Commissioners v. South Shore Marina,* (1981) Ind.App., 422 N.E.2d 723."

Coupled with this analysis is the judicial deference given to administrative agencies. Indiana courts have long deferred to an agency's expertise and have not substituted their judgment for that of the agency. *Wallace v. Feehan* (1934), 206 Ind. 522, 533, 190 N.E. 438, 443; *Mason,* at 353. The burden of proving that the DNR's emergency order was arbitrary and capricious rests upon the fishermen and restaurant. *Mason,* at 354.

■ In the present case, the trial court abused its discretion in finding in favor of the plaintiffs since the plaintiffs did not establish a prima facie case that the DNR's order was arbitrary and capricious. The DNR presented evidence that 76,000 chinook salmon would be killed if the six-week temporary ban were not imposed. The commercial fishermen's own expert did not dispute the DNR's research methodology; he merely provided his own estimate that between 17,000 and 35,000 salmon would die in the period. Even if the trial court accepted the lowest estimate, this was sufficient to negate the argument that the DNR acted arbitrarily. The DNR also presented evidence of the financial impact of gill nets on the state's efforts to stock Lake Michigan and on the sport fishing industry. The DNR's conclusions were based upon years of study and investigation. From all the evidence presented, it cannot be said that the DNR's order, even

viewed prima facially, was "willful and unreasonable" or was "one without some basis which would lead a reasonable and honest person to the same conclusion." *Mason,* at 354. Therefore, the trial court abused its discretion when it enjoined the DNR from enforcing the emergency ban on gill net fishing. The plaintiffs did not show even a prima facie case for success on the merits.

Since the commercial fishermen and restaurant had no legally recognizable harm and since they did not establish a reasonable likelihood of success on the merits by demonstrating a prima facie case, the trial court clearly abused its discretion by enjoining the emergency ban. Because of our disposition of these two issues, we need not address the arguments concerning the remaining two elements for a preliminary injunction. *See College Life,* at 741–42.

*Issue Three*

The commercial fishermen and restaurant argue that this appeal should be dismissed because the issues are now moot. The emergency order expired by its own term on October 31, 1986. The appellees claim that no judicial order could change the status quo.

It is standard practice in this state to dismiss an appeal when it becomes unnecessary to decide the question presented. *Bartholomew County Hospital v. Ryan* (1982), Ind.App., 440 N.E.2d 754, 757, *trans. denied.* An issue is deemed moot when it is " 'no longer "live" or when the parties lack a legally cognizable interest in the outcome' " of its resolution. *Bartholomew,* at 757, *quoting, United States Parole Commission v. Geraghty* (1980), 445 U.S. 388, 396, 100 S.Ct. 1202, 1208, 63 L.Ed.2d 479, 490. Thus, where the principal questions at issue cease to be of real controversy between the parties, the errors assigned become moot questions and this court will not retain jurisdiction to decide them. *Bartholomew,* at 757; *Aeronautics Commission v. State ex rel. Emmis Broadcasting Corp.* (1982), Ind.App., 440 N.E.2d 700, 703, *trans. denied.* In addition, when we are unable to provide effective relief upon an issue, that issue is

deemed moot, and we will not reverse a trial court's determination where "absolutely no change in the status quo will result." *Krochta v. State* (1978), 175 Ind. App. 436, 439, 372 N.E.2d 475, 478.

■ This appeal is not moot due to the $50,000 bond posted by the appellees. Ind. Rules of Procedure, Trial Rule 65(C) provides as follows:

> "No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained."

In the present case, the trial court determined that a bond of $50,000 was necessary in light of the potential losses that could stem from the injunction. Our disposition of this appeal has a direct bearing upon the state's ability to seek compensation under the bond. Therefore, since potential liability under the bond may exist, this appeal is not moot.

■ Even if no bond had been posted, this case would come under the public interest exception to the mootness doctrine. As our supreme court has held, "The law in Indiana is well settled that although a specific issue may be moot, the fact that it recurs year after year and is of great public interest is sufficient to allow the issue to be considered on its merits." *Indiana Education Employment Relations Board v. Mill Creek Classroom Teachers Association* (1983), Ind., 456 N.E.2d 709, 712. Our court has held that the public interest exception "may be invoked only upon the confluence of three elements: the issue involves a question of great public importance which is likely to recur in a context which will continue to evade review." *Bartholomew*, at 759.

The three prerequisites to the application of the public interest exception are fully satisfied. First, the issue is of great importance to the public since taxpayers' money is being used to stock the lake with salmon. Also, recreational sport fishing is reduced by the destruction of chinook salm-on. Second, from the evidence presented at trial, it is likely that the DNR will attempt to impose another temporary ban, either on a permanent or emergency basis, on gill net fishing during the 1987 season. Third, judicial review constantly could be evaded if the plaintiffs pursue and obtain an injunction on the eve of the proposed, six week ban. Therefore, the issue is not moot under the public interest exception.

Judgment reversed.

ROBERTSON, J., concurs.

SULLIVAN, J., dissents with separate opinion.

SULLIVAN, Judge, dissenting.

I respectfully dissent. This appeal should be dismissed as moot.

At the outset, I think it appropriate to voice my disagreement with the conclusion of the majority that the commercial fishermen do not have a cognizable legal interest so as to permit a challenge to the validity or reasonableness of the Department's emergency regulation. Presumably, the majority would not permit these plaintiffs to challenge the regulation even if it were patently unconstitutional. I conclude otherwise.

To be sure, the licenses under which the commercial fishermen operate are revocable and the use of such licenses a privilege. Nevertheless, those licenses confer upon the holder a property interest, albeit perhaps a qualified or limited interest. *Lake County Beverage Co. v. 21st Amendment, Inc.* (1982) 1st Dist. Ind.App., 441 N.E.2d 1008. Such interest is sufficient to authorize a challenge to an arguably unreasonable regulation.

As I read the licensing statute, I.C. 14–2–7–12 (West's Ann.Code 1986 Supp.), the commercial licenses here involved may be revoked only for violation of the terms of the license, the Fish and Wildlife Act, or of an order or rule issued and promulgated under the Act. No such violation is involved here. Accordingly, it would seem that a holding of *Lake County Beverage Co. v. 21st Amendment, Inc., supra,* is

applicable. Although dealing with a holder of a liquor license, our court, quoting from *Midwest Beverage Co. v. Gates* (N.D.Ind. 1945) 61 F.Supp. 688, stated:

> " 'On the other hand the use of the permit, once granted, has the elements of property irrespective of what the legislature may declare about the permit itself, and except for the omnipresent and unlimited power of the state to revoke or modify the terms of the permit in the interest of the public welfare, the use of such permit, if not the permit itself, is property within the meaning of the due process clause of the Federal Constitution.' " 441 N.E.2d at 1011.

Having set forth my disagreement with the position taken by my colleagues as to "standing," I must now set forth my agreement with a basic premise underlying the decision. In the matter before us, the regulation seems on its face to be a reasonable exercise of the police power of the State. I cannot, however, deduce from that conclusion that the trial court abused its wide discretion in granting the temporary injunction and thereby maintaining the status quo for the extremely brief period involved.

In granting the temporary injunction, the trial court specifically stated that the determination was "not a final adjudication of the case on the merits." Record at 110. That statement merely reflects long standing applicable case law. Our cases, including the majority decision here, have repeatedly reiterated the principle stated in *The Indiana Annual Conference Corp. v. Lemon* (1956) 235 Ind. 163, 131 N.E.2d 780:

> "In our determination of whether or not the trial court committed any error in granting the temporary injunction in this case, the appellee (the plaintiff below) need only show a prima facie case for an injunction and that injury to him would be certain and irreparable if the application be denied and that injury to the defendant below if the temporary injunction be granted, may be adequately indemnified by bond. It is not necessary that a case should be made that would entitle the plaintiff to relief in all events. It is necessary only that the pleadings and evidence be such that it makes out a case for a proper investigation in equity and that the status quo be maintained pending such trial on the merits. There must be a clear abuse of discretion by the trial court before the court on appeal may interfere." 235 Ind. at 167, 131 N.E.2d 780.

It is clear, therefore, that the nature of the decision and the considerations essential to it are different at the preliminary injunction stage than at the time of final adjudication. In this connection it is important to note that the purpose of a preliminary injunction is to maintain the status quo until a final determination can be made. *The Indiana Annual Conference Corp. v. Lemon, supra; Riggin v. Board of Trustees of Ball State Univ.* (1986) 1st Dist. Ind.App., 489 N.E.2d 616, 630 *trans. denied*, 499 N.E.2d 243 (Shepard and Dickson, JJ. dissenting); *Rees v. Panhandle Eastern Pipe Line Co.* (1978) 2d Dist., 176 Ind.App. 597, 377 N.E.2d 640; *Powell v. Powell* (1974) 3d Dist., 160 Ind.App. 132, 310 N.E.2d 898.

In my view, the majority's imposition of a "reasonable likelihood of success" test, in the context of the case before us, is in reality a requirement that a petitioner for temporary injunction prematurely prove entitlement to final and permanent relief.

To say, as in *Rees v. Panhandle Eastern Pipe Line Co., supra,* that there must be a showing of irreparable harm does not justify a citation of that case (as in *Steenhoven v. College Life Ins.* (1984) 2d Dist. Ind. App., 458 N.E.2d 661, *reh. denied* 460 N.E.2d 973, and in *Indiana State Dept. of Welfare v. Stagner* (1980) 4th Dist. Ind. App., 410 N.E.2d 1348) for the proposition that a temporary injunction may issue only upon a showing of a reasonable likelihood of success upon a trial for permanent injunction. In *Wells v. Auberry* (1982) 1st Dist. Ind.App., 429 N.E.2d 679, the court observed that as the gravity of the threatened harm is reduced, the need to show a likelihood of ultimate success may increase. The court, however, clearly focused upon the need to show irreparable harm. In any event, I do not believe that a "reasonable

likelihood of success" test is appropriate in the case before us.

In the order here appealed the trial court carefully set forth, as relevant, the various equitable considerations. They included the substantial expenditure made by the Department in stocking the salmon, the depletion of that fish population by the use of gill-nets, the inability of the commercial fishermen to reasonably employ an alternative method of catching perch, and the detriment to sport fishermen and the charter boat business. Having done so, the court then acknowledged the authority of the Department to issue the regulation in question and commended that legitimate effort to protect the wildlife resources of the State. The court, however, as was its obligation in attempting to maintain the status quo, stated that "a balancing of the equities" led to the grant of the temporary injunction.

Because there is evidentiary support for the factual conclusions reached by the trial court and because the court was clearly exercising its broad discretion in making the determination, I find no basis in the record to hold that the trial court abused that discretion in granting the injunction. *State Board of Public Welfare v. Watkins* (1984) 1st Dist. Ind.App., 459 N.E.2d 394.

The correctness or incorrectness of the interlocutory order, however, is not a necessary or even appropriate consideration for a proper disposition of this appeal.

In my view the dispute which previously existed is moot. The emergency order or regulation banning gill-nets expired by its own terms on October 31, 1986. The injunction against the enforcement of that order died with it. No other emergency order, no permanent order, or no other action by the Department is before us for review.

We should not hold, as does the majority, that because an issue is likely to recur it should be decided. It may well be that the Department contemplates a permanent ban upon the use of gill-nets in the Indiana waters of Lake Michigan or at least a restriction upon the size of the nets and/or the dates when such nets might be used. However, such contingency is not presented in the appeal before us. It requires sheer speculation to suppose that the Department will properly and duly promulgate another identical or even substantially similar ban at some future time. Even were we to assume that some regulation might be forthcoming with regard to the control of salmon population, or even the use of gill-nets, we do not know whether the factual data to test the reasonableness of such regulation will remain the same.

I recognize that my preferred resolution by dismissal of the appeal as moot might lead to a repetition of short term administrative rules and regulations which are not readily susceptible to full litigation and appellate review. I would not presume that the Department would engage in such tactics, however. In any event, the controversy which developed as a result of the Department's emergency order no longer exists and I am not convinced, that although it is of public import, it is likely to recur— at least not in the same or substantially identical form or content. For this reason the appeal should be dismissed as moot. *Bremen Public Schools v. Varab* (1986) 3d Dist. Ind.App., 496 N.E.2d 125; *Bartholomew County Hospital v. Ryan* (1982) 1st Dist. Ind.App., 440 N.E.2d 754.

It is possible to make an argument that given a time frame similar to that involved here, the grant of any injunction, other than a restraining order without notice, should be governed by the procedurers and principles applicable to permanent injunctions. *See Peters v. Davidson, Inc.* (1977) 1st Dist., 172 Ind.App. 39, 359 N.E.2d 556. In such cases, the consolidation provisions of Trial Rule 65(A)(2) would be made mandatory. Any such dramatic change, however, must come from our Supreme Court or the General Assembly.[1]

---

1. As a general proposition, a temporary injunction is improper if its issuance effectively adjudicates the merits and affords all or most of the relief which would be granted if plaintiff were successful at trial. *Rees v. Panhandle Eastern Pipe Line Co.* (1978) 2d Dist., 176 Ind.App. 597, 611, 377 N.E.2d 640, 650.

In a somewhat related context, the majority decision seems to say that an otherwise moot appeal becomes viable if a bond has been posted. As stated, it is my view that the trial court did not abuse its discretion as a matter of law, in maintaining the status quo for the brief time covered by the Department's emergency order. I hold this view even though I agree that the particular regulation in question is facially reasonable. Although the trial court might well have properly denied the temporary injunction, it did not err in granting it. *Indiana Annual Conference Corp. v. Lemon, supra,* 131 N.E.2d 780; *School City of Gary v. Continental Electric Co.* (1971) 149 Ind. App. 416, 273 N.E.2d 293.

Even were it otherwise, I would not rule upon the merits of the moot controversy merely to provide a predicate for the Department to recoup any losses from the bond posted by the commercial fishermen.

In *Palace Pharmacy, Inc. v. Gardner and Guidone, Inc.* (1975) 1st Dist., 164 Ind.App. 513, 329 N.E.2d 642, it was held that the reason for requiring a bond upon the issuance of a preliminary injunction is to protect against damage suffered as a result of the preliminary injunction if that party prevails at a later hearing, i.e., upon the final determination as to a permanent injunction. In the case before us, there is no showing that the cause ever proceeded beyond the preliminary injunction stage. It could be argued, therefore, that it is improper to make any determination with respect to the bond.

Furthermore, *Howard D. Johnson Co. v. Parkside Development Corp.* (1976) 1st Dist., 169 Ind.App. 379, 348 N.E.2d 656, holds that a bond is not a prerequisite for recovery of costs and damages suffered or incurred by a party wrongfully enjoined. To the same effect is *Smith v. Indiana State Board of Health* (1974) 1st Dist., 159 Ind.App. 360, 367, 307 N.E.2d 294, 298 (damages for wrongful injunction are recoverable even though no bond posted).

The existence of a bond in this case and any arguable claim by the Department of damages sustained during the period of the injunction do not therefore provide any sound basis for deciding the moot appeal.